IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

|  |  |  |
|---|---|---|
| COGNATE BIOSERVICES, INC., et al., | * | |
| Plaintiffs, | * | |
| v. | * | CIVIL NO.: WDQ-13-1797 |
| ALAN K. SMITH, et al., | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

MEMORANDUM OPINION

Cognate BioServices, Inc. ("Cognate"), Healthbank, Inc. ("Healthbank"), Oncocidex, Inc. ("Oncocidex"), Theradigm, Inc. ("Theradigm"), and Vesta Therapeutics, Inc. ("Vesta"), (collectively "the Plaintiffs"), brought suit against Alan K. Smith and Alan Smith Consulting, Inc. ("Alan Smith Consulting"), (collectively "the Defendants"), for violations of the Computer Fraud and Abuse Act,[1] misappropriations of products, and misappropriations of trade secrets. Pending is the Defendants' motion to dismiss, or in the alternative, to stay under *Colorado River Water Conservation District, et al. v. United States*, 424 U.S. 800 (1967). Also pending is the Plaintiffs' motion for an order to preserve evidence. For the following reasons, the

---

[1] 18 U.S.C. §§ 1030 *et seq.*

Defendants' motion to dismiss will denied. The Plaintiffs' motion to preserve evidence will be denied.

I. Background

A. Complaint Allegations[2]

The Defendants are all Delaware corporations with their principal places of business in Anne Arundel County, Maryland. See ECF No. 1 ¶ 1-5. Cognate is contract service manufacturer and developer of human cell therapy products and services in the biomedical industry. Id. ¶ 10. Healthbank is a customer of Cognate engaged in the business of cryogenic storage of human cell products. Id. ¶ 14. Oncocidex, Theradigm, and Vesta are customers of Cognate engaged in the business of developing human or veterinary cell therapy products and services in the biomedical industry. Id. ¶ 15. The Plaintiffs have "spent valuable time, labor, and substantial sums of money in creating and developing" their Trade Secrets[3] and Trade Products.[4] Id. ¶¶

---

[2] On a motion to dismiss, the well-pled allegations in the complaint are accepted as true. *Brockington v. Boykins*, 637 F.3d 503, 505 (4th Cir. 2011). The Court will consider the pleadings, matters of public record, and documents attached to the motions that are integral to the complaint and whose authenticity is not disputed. See *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).

[3] The Plaintiffs define Trade Secrets as the:
> [V]arious processes formulas, designs, systems, assays, methods and techniques relating to the manufacture, storage, handling, distribution and/or use of human and veterinary cell therapy products and services that derive independent economic value,

2

11, 16. The Plaintiffs' Trade Products have "acquired a reputation of excellent quality" through the Plaintiffs' "quality work, long experience, and skill." Id. ¶ 12. The Plaintiffs' Trade Products and Trade Secrets are valuable and a source of substantial revenues and potential income. See id. ¶¶ 13, 17. The Trade Secrets were developed by Cognate on behalf of Healthbank, Oncocidex, Theradigm, and Vesta. Id. ¶ 19. The Plaintiffs devoted "great sums of money" to developing their Trade Secrets "which cannot be duplicated without improperly obtaining access to these Trade Secrets." Id. ¶ 18.

From December 2003 to May 2010, Smith was President and Chief Executive Officer ("CEO") for Cognate. ECF No. 1. ¶ 20.[5] While President and CEO, Smith had the authority to access all information in Cognate's computer systems, including Trade Products and Trade Secrets owned by the Plaintiffs. Id. ¶ 22.

---

actual or potential, from generally not being known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from their disclosure or use and that are the subject of efforts reasonable under the circumstances to maintain secrecy.

ECF No. 1 ¶ 16.

[4] The Plaintiffs define Trade Products as the "various processes, formulas, designs, systems, assays, methods, and techniques relating to the manufacture, storage, handling, distributions and/or use of human and veterinary cell therapy products and services." ECF No. 1 ¶ 11.

[5] Smith resides in Columbia, Maryland and regularly transacts business in Howard County, Maryland. ECF No. 1 ¶ 6.

Through his position, Smith owed a duty of confidentiality to the Plaintiffs, including "his obligation to maintain the strict security precautions to preserve the secret confidential and proprietary nature of Plaintiffs' processes, formulas, designs, systems, assays, documents and forms, methods and techniques, constituting Plaintiffs' Trade Secrets and Trade Products." *Id.* ¶ 23. At all relevant times, Cognate's computer systems stored confidential information owned by Cognate and its customers, including the Plaintiffs' Trade Secrets and Trade Products. ECF No. 1 ¶ 28. Cognate provided Smith with a Dell Laptop (the "Cognate Laptop") for his work as President and CEO. *Id.* ¶ 29. Cognate's employee handbook required Smith to return the Cognate Laptop and all passwords to Cognate at the end of his employment. *Id.* ¶ 30.[6] After Smith's resignation and termination in May 2010, he did not return the Cognate Laptop or the computer passwords. *Id.* ¶ 32.

On May 5, 2010, Smith became the Head of U.S. Operations for MacroCure, Ltd. ("MacroCure"), an Israel based biotechnology company and former Cognate customer. ECF No. 1 ¶ 24. On August 10, 2010, Smith formed Alan Smith Consulting, a biotechnology

---

[6] Smith signed an acknowledgment that he received the employee handbook, that he was bound by its provisions, and that he had the responsibility to promptly read it. ECF No. 1 ¶ 31.

4

consulting service. *Id.* ¶ 25.[7] On October 18, 2012, Smith returned the Cognate Laptop to Cognate. *Id.* ¶ 34. Smith never returned the computer passwords. *Id.* ¶ 33. Smith and Alan Smith Consulting "provided and continue to provide biotechnology services to MacroCure." *Id.* ¶ 26.

Smith knew his authority to use and access Cognate's computer systems was revoked upon the termination of his employment. ECF No. 1 ¶ 35. On several occasions after his termination, Smith improperly accessed Cognate's virtual private network ("VPN") and its server computers, and copied or accessed Cognate's Trade Products and Trade Secrets information. *Id.* ¶ 36. Smith also improperly accessed the Cognate Laptop, and copied or accessed the Trade Secrets and Trade Products of Healthbank, Oncocidex, Theradigm, and Vesta on several occasions after his termination. *Id.* ¶ 37. Smith and Alan Smith Consulting "wrongfully appropriated for their own use Plaintiffs' Trade Secrets and Trade Products for Defendants' own use and for the use of MacroCure." *Id.* ¶ 40.

---

[7] Alan Smith Consulting is a Utah corporation with its principal place of business in Maryland. ECF No. 1 ¶ 7.

B.  Dell Laptop[8]

In May 2010, Smith purchased a Dell Laptop computer. *See* ECF No. 16 at 3. MacroCure reimbursed him for the cost of the computer. *Id.* On June 28, 2013, a subpoena was served on Smith requiring him to produce the Dell Laptop at the trial in the state court action on July 9, 2013. *Id.*; ECF No. 16-3.

C.  State Action[9]

On March 2, 2012, Smith filed suit in the Circuit Court for Baltimore County against Cognate, Toucan II,[10] Linda F. Powers, and Robert F. Hemphill, Jr.[11] (collectively "State Action Defendants"). *See* ECF No. 15-1 at 2; *Smith v. Cognate BioServices, Inc., et al.*, No. 03-C-12-2363 ("state action"). In his complaint, Smith asserted claims for wages, violations of the Maryland Wage Payment and Collection Law, indemnity, unjust enrichment, and declaratory judgment. *See* ECF No. 15-3. Smith alleges that the State Action Defendants owed him deferred

---

[8] With respect to that motion, the facts about the Dell Laptop, the subject of the Plaintiffs' motion to preserve evidence, are taken from the parties' pleadings. *See* ECF Nos. 16, 18, 20.

[9] Information about the concurrent state action is taken from the parties' pleadings, Smith's complaint in the state action, and the Baltimore County Circuit Court docket.

[10] Toucan II is a venture capital fund controlled by Powers and Hemphill, which owns Cognate. *See* ECF No. 15-3 ¶¶ 4.

[11] Powers and Hemphill are husband and wife, and the only two members of Cognate's Board of Directors. *See* ECF No. 15-3 ¶¶ 6-8.

salary, unused vacation time, and withheld taxes. *See id.* On May 4, 2012, the State Action Defendants filed a counterclaim against Smith, alleging constructive fraud, trover and conversion, breach of contract, misappropriation of trade secrets, and misappropriation of products. *See* ECF No. 15-1 at 3; ECF No. 17-1 at 4. A trial was originally scheduled for July 9, 2013, but was postponed on July 2, 2013. *See* ECF No. 15-1 at 4. On February 18, 2014, the trial began. *See* No. 03-C-12-2363.

D. Procedural History of Federal Action

On June 19, 2013, the Plaintiffs sued the Defendants for violations of the Computer Fraud and Abuse Act, misappropriation of products, and misappropriation of trade secrets.[12] On August 15, 2013, the Defendants moved to dismiss for lack of jurisdiction, or in the alternative, stay the action in favor of a pending case in the Circuit Court for Baltimore County. ECF

---

[12] The Plaintiffs assert 15 causes of action against all the Defendants:
- Violations of the Computer Fraud and Abuse Act against all Defendants brought by Cognate (Count I), Healthbank (Count II), Oncocidex (Count III), Theradigm (Count IV), and Vesta (Count V);
- Misappropriations of Products against all Defendants brought by Cognate (Count VI), Healthbank (Count VII), Oncocidex (Count VIII), Theradigm (Count IX), and Vesta (Count X);
- Misappropriations of Trade Secrets against all Defendants brought by Cognate (Count XI), Healthbank (Count XII), Oncocidex (Count XIII), Theradigm (Count XIV), and Vesta (Count XV).

ECF No. 1 ¶¶ 41-150.

No. 15. On August 15, 2013, the Plaintiffs moved for an order to preserve evidence. ECF No. 16. On August 19, 2013, the Plaintiffs opposed the motion to dismiss. ECF No. 17. On September 3, 2013, the Defendants opposed the motion to preserve evidence. ECF No. 18. On September 6, 2013, the Defendants replied. ECF No. 19. On September 16, 2013, the Plaintiffs replied. ECF No. 20.

II. Analysis

    A.    Legal Standard

Under Fed. R. Civ. P. 12(b)(1), the Court must dismiss an action if it discovers it lacks subject matter jurisdiction. The plaintiff has the burden of proving that the Court has jurisdiction, and the Court must make all reasonable inferences in the plaintiff's favor. *Khoury v. Meserve*, 268 F. Supp. 2d 600, 606 (D. Md. 2003), aff'd, 85 F. App'x 960 (4th Cir. 2004). The Court may "look beyond the pleadings" to decide whether it has subject matter jurisdiction, but it must presume that the factual allegations in the complaint are true. *Id*.

    B.    The Defendants' Motion to Dismiss

The Defendants argue that this Court should dismiss or stay the federal action because this case is parallel to an on-going state court action. See ECF No. 15-1 at 5. The Plaintiffs contend that this case is not parallel to the state court

8

action, and there are no exceptional circumstances to justify abstention. See ECF No. 17-1 at 8-9.

Under the abstention doctrine recognized in *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (U.S. 1976), a district court may abstain from exercising jurisdiction "in the exceptional circumstances where a federal case duplicates contemporaneous state proceedings, and wise judicial administration, giving regard to conservation of judicial resources, and comprehensive disposition of litigation clearly favors abstention." *Vulcan Chem. Techs., Inc. v. Barker*, 297 F.3d 332, 340-41 (2002) (internal citation and quotation marks omitted). The Supreme Court has "declined to prescribe a hard and fast rule" for determining whether *Colorado River* abstention is appropriate. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 15 (1983). The "threshold question" is "whether there are parallel federal and state suits." *Great Am. Ins. Co. v. Gross*, 468 F.3d 199, 207 (4th Cir. 2006). "Suits are parallel if substantially the same parties litigate substantially the same issues[13] in different forums." *Chase*

---

[13] *Compare Vulcan Chem. Techs., Inc.*, 297 F.3d at 340 (federal action was parallel to state action when both sought "to apply the same law in deciding whether to enforce or vacate the same arbitration award"), *with Great Am. Ins. Co.*, 468 F.3d at 208 (claims not parallel when issues litigated in state court action would not include facts necessary to prove federal claim, and remedies sought in federal and state actions were "entirely different"), *and Gannett Co. v. Clark Constr. Grp., Inc.*, 286

9

*Brexton Health Servs., Inc. v. Maryland*, 411 F.3d 457, 464 (4th Cir. 2005).

If a parallel suit exists, the Court must "carefully balance" six factors:

> (1) whether the subject matter of the litigation involves property where the first court may assume *in rem* jurisdiction to the exclusion of others; (2) whether the federal forum is an inconvenient one; (3) the desirability of avoiding piecemeal litigation; (4) the relevant order in which the courts obtained jurisdiction and the progress achieved in each action; (5) whether state law or federal law provides the rule of decision on the merits; and (6) the adequacy of the state proceeding to protect the parties' rights.

*Chase Brexton Health Servs., Inc.*, 411 F.3d at 463-64. "No one factor is necessarily determinative," and the court's decision must not "rest on a mechanical checklist." *Colorado River*, 424 U.S. at 818-19. Rather, the Court must apply the factors in "a pragmatic, flexible manner with a view to the realities of the case at hand,"[14] taking into account "both the obligation to exercise jurisdiction and the combination of factors counseling against that exercise."[15]

---

F.3d 737, 743 (4th Cir. 2002) (federal contract suit was not parallel to state lien action, because the suits "involve[d] different issues with different requisites of proof," and the actions sought different remedies).

[14] *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 13.

[15] *Colorado River*, 424 U.S. at 818.

Here, the federal case involves additional claims for violations of the Computer Fraud and Abuse Act, four additional plaintiffs, and an additional corporate defendant. *See generally* ECF No. 1. The Plaintiffs contend that although the plaintiff corporations have a common shareholder, the additional plaintiffs in the federal action are separate and distinct corporate entities, and their rights are not implicated in the state action. *See* ECF No. 17-1 at 5. The Defendants argue that the actions are parallel despite the difference in parties because interests of the additional plaintiffs are aligned with the interests of Cognate. *See* ECF No. 19 at 2. However, the Fourth Circuit has strictly construed the requirement for parallel federal and state suits, "requiring that the parties involved be almost identical." *Great Am. Ins. Co.*, 468 F.3d at 208.[16] In this case, the four additional plaintiffs and Alan Smith Consulting are not parties in the state case. Abstaining in favor of the state proceeding would deprive the four plaintiffs of the opportunity to litigate their claims.[17]

---

[16] Although "the parties in *Colorado River* were not identical to the parties in the 'parallel' state action, at least the federal plaintiff was a party to the state action." *Great Am. Ins. Co.*, 468 F.3d at 208. By contrast, a "lack of similarity of the parties" existed when the defendant in the federal action was not the defendant in the state action. *Id.*

[17] *See Chase Brexton Health Servs., Inc.*, 411 F.3d at 464 (cases were not parallel when five plaintiffs in federal action were not party to the state action).

The Plaintiffs also argue that the issues are not the same because, in the federal action, the Plaintiffs assert a cause of action under the Computer Fraud and Abuse Act, alleging that Smith improperly accessed Cognate's server through its VPN. *See* ECF No. 17-1. The Plaintiffs contend that Cognate's counterclaims in the state action only allege that Smith misappropriated trade secrets and products from the laptop itself. *Id.* The Defendants argue that this is an isolated factual difference that does not preclude *Colorado River* abstention. *See* ECF No. 19 at 3. Although there is some factual overlap between the claims brought in each case, the state action may not necessarily include the facts required to resolve the Plaintiffs' federal claim.[18]

Even assuming, without deciding, that the state court action is parallel litigation, the *Colorado River* factors do not support abstention in this case. The first factor is inapplicable because the subject matter of the state court litigation does not involve *in rem* jurisdiction. The second factor also does not affect the abstention analysis because the parties agree that there is no issue with the convenience of the federal forum. *See* ECF No. 15-1 at 11; ECF No. 17-1 at 15.

---

[18] *See Great Am. Ins. Co.*, 468 F.3d at 208 (cases were not parallel when the plaintiffs in the state court action were not required to prove the information relevant to the federal court claims).

The third factor is the desirability of avoiding piecemeal litigation. *See Chase Brexton Health Servs., Inc.*, 411 F.3d at 463-64. The Defendants argue that this factor supports abstention because "there is substantial overlap in the issues that will need to be litigated and resolved in each court." ECF No. 15-1 at 12. The Defendants contend that collateral estoppel will bar the Plaintiffs' claims when the state action is resolved. *See* ECF No. 19 at 5-19. However, *res judicata* and collateral estoppel problems are threats inherent in all concurrent litigation; they are not the types of inconsistencies against which *Colorado River* abstention is designed to protect. *See Gannett Co., Inc. v. Clark Constr. Grp., Inc.*, 286 F.3d 737, 746 (4th Cir. 2002); *MidAtlantic Int'l, Inc. v. AGC Flat Class N. Am., Inc.*, 497 F. App'x 279, 283 (4th Cir. 2012). "The threat of inconsistent results and the judicial inefficiency inherent in parallel . . . litigation, however, are not enough to warrant abstention." *Gannett Co., Inc.*, 286 F.3d at 744. In order for abstention to be appropriate, "retention of jurisdiction must create the possibility of inefficiencies and inconsistent results beyond those inherent in parallel litigation, or the litigation must be particularly illsuited for resolution in duplicate forums." *Id.* For example, in *Colorado River*, the most important factor in approving dismissal was a federal statute demonstrating a clear federal policy for the

avoidance of piecemeal adjudication of a river system's water rights. *See Colorado River*, 424 U.S. 800, 819 (1976); *Moses H. Cone Mem'l Hosp. v. Mercury Contsr. Corp.*, 460 U.S. 1, 16 (1983). Here, there is no such policy, and the Defendants have not identified any threat of piecemeal litigation beyond those inherent in concurrent proceedings.

The fourth factor, the order in which the courts took jurisdiction and the progress of the litigation, weighs in favor of abstention. Smith filed his action in state court a year before the commencement of the federal suit, and the state court action has progressed to trial while discovery has not begun in federal court. The fifth factor, the presence of federal law issues, counsels against abstention. The federal court action raises a claim based on violations of federal law, the Computer Fraud and Abuse Act, as well as state law claims for misappropriation of products and trade secrets. *See, e.g.* ECF No. 1 ¶¶ 41-45, 66-72, 101-10. "Although in some rare circumstances the presence of state-law issues may weigh in favor of that surrender [of jurisdiction], the presence of federal-law issues must always be a major consideration in weighing against surrender." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 26. The Defendants argue that the presence of the federal claim does weigh against abstention because the Computer Fraud and Abuse Act provides for concurrent jurisdiction in

state and federal court. *See* ECF No. 15-1 at 12. However, the state court cannot exercise jurisdiction over the Computer Fraud and Abuse Act claim in the pending case because the state action has already progressed to trial. Accordingly, the presence of federal law issues in this case weighs against abstention. *See Moses H. Cone Mem'l Hosp.*, 460 U.S. at 26.

The sixth factor, the adequacy of the state court proceedings to protect the parties' rights, also supports this Court's exercise of jurisdiction. Although there is no question the Maryland court can adequately adjudicate the merits of the action before it, the state action would likely not protect the rights of the four additional plaintiffs in the federal action.

The Defendants also argue that the federal action was a "contrived, defensive reaction" to the state action, which supports abstention. *See* ECF No. 15-1 at 11, 13-14. In arguing that the federal action is contrived, the Defendants rely on the fact that Cognate, Healthbank, Oncocidex, Theradigm, and Vesta are all owned, operated and controlled by the same entity, share the same address in Maryland, and the four additional plaintiffs became qualified to conduct business in Maryland only days before they filed their federal action. *See* ECF No. 15-1 at 9-10. The Plaintiffs contend that, although the corporations only recently qualified or re-qualified to do business in Maryland, they are separate and distinct corporate entities that have

conducted business on an on-going basis outside of Maryland. *See* ECF No. 17-1 at 5. The Defendants' allegations do not clearly demonstrate the contrived nature of the federal action, and do not create exceptional circumstances warranting abstention.

In balancing these factors, the Court concludes that this case does not present the exceptional circumstances necessary to justify *Colorado River* abstention. The only factor weighing in favor of abstention is the timing and relative progress of the state court action. Accordingly, even if the cases were considered parallel, on balance, abstention would be improper. The Defendants' motion to dismiss will be denied.

C. The Plaintiffs' Motion to Preserve Evidence

The Plaintiffs request the Court to issue an order to preserve the Dell Laptop and all "electronic computer storage devices containing any copies of electronic computer files owned by the plaintiffs, or provided to either of the defendants by the plaintiffs, including external computer mass storage devices, thumb drives, removal hard drives, or magnetic storage devices of any type or part of a computer system." *See* ECF No. 16 at 1. The Plaintiffs argue that a preservation order is necessary to secure the Cognate files and the Dell Laptop which are "essential" to the Plaintiffs' claims. *See* ECF No. 16 at 6.

The Defendants assert that Smith returned the Dell Laptop to MacroCure sometime in late July or early August 2013, as he was required to do after he resigned from MacroCure. *See* ECF No. 18 at 2-3. After the Plaintiffs filed this motion on August 15, 2013, Smith contacted the person to whom he returned the Dell Laptop, Idan Peer, and requested that he "not dispose or delete any of the files" on the computer. *See* ECF No. 18-1 at 2-3. Smith's counsel provided the Plaintiffs with Peer's mailing address in Philadelphia, Pennsylvania. *See* ECF No. 18-1 at 3. The Plaintiffs contend that a preservation order is still necessary because, by returning the Dell Laptop to MacroCure, "Smith has demonstrated the urgent need for an order preserving evidence," and "he also appears to have the practical ability to obtain the return of that evidence." ECF No. 20 at 5.

Parties have a duty to preserve material evidence "when a party reasonably should know that the evidence may be relevant to the anticipated litigation." *Silvestri v. General Motors Corp.*, 271 F.3d 583, 591 (4th Cir. 2001). If a party does not own or control the evidence, "he still has an obligation to give the opposing party notice of access to the evidence or of the possible destruction of the evidence" if he anticipates litigation. *Id.* A federal court may issue preservation orders as part of its inherent authority to manage its own proceedings. *See Pueblo of Laguna v. United States*, 60 Fed. Cl. 133, 136

(Fed. Cl. 2004). In considering whether to grant a motion for a preservation order, the Court of Claims has adopted a standard requiring "that the one seeking a preservation order demonstrate that it is necessary and not unduly burdensome." *Id.* at 138. A party seeking a preservation order "must show that absent a court order, there is significant risk that relevant evidence will be lost or destroyed -- a burden often met by demonstrating that the opposing party has lost or destroyed evidence in the past." *Id.*

Other district courts have adopted a three factor balancing test:

> (1) the level of concern the court has for the continuing existence and maintenance of the integrity of the evidence in question in the absence of an order directing preservation of the evidence; (2) any irreparable harm likely to result to the party seeking the preservation of evidence absent an order directing preservation; and (3) the capability of an individual, entity, or party to maintain the evidence sought to be preserved, not only as to the evidence's original form, condition or contents, but also the physical, spatial and financial burdens created by ordering evidence preservation.

*See, e.g., Capricorn Power Co. v. Siemens Westinghouse Power Corp.*, 220 F.R.D. 429 (W.D. Pa. 2004); *Riego v. Carroll*, No. 08-433-SLR, 2009 WL 3448850, at *2 (D. Del. Oct. 23, 2009).

The Plaintiffs argue that because Smith's answers to interrogatories in the Maryland state action were inconsistent as to whether he copied any Cognate files from the Cognate

Laptop or if copies of any such files had been deleted previously, that demonstrates the need for a preservation order. See ECF No. 16 at 4-5. However, it appears that Smith has complied with his duty to preserve material evidence with respect to the Dell Laptop. He gave the opposing party notice that the laptop he used in connection with his employment at MacroCure would be returned after his resignation. See ECF No. 20 at 4. Smith also provided the Plaintiffs with the name and address of the person in possession of the Dell Laptop, and made efforts to ensure the relevant material on the laptop was not deleted. See ECF No. 18-1. The Plaintiffs have not provided evidence demonstrating that there is a significant risk that any material evidence will be destroyed without a court order. Accordingly, the motion for an order to preserve evidence will be denied.

III. Conclusion

For the reasons stated above, the Defendants' motion to dismiss and the Plaintiffs' motion to preserve evidence will be denied.

_3/11/14_
Date

_/s/ William D. Quarles_
William D. Quarles, Jr.
United States District Judge