IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

```
                                 *
COGNATE BIOSERVICES, INC.,
et al.,                          *

      Plaintiffs,                *

         v.                      *         CIVIL NOS.: WDQ-13-
                                           1797; WDQ-14-2950
ALAN K. SMITH, et al.,           *

      Defendants.                *

*     *     *     *     *     *   *   *    *    *    *    *    *
```

MEMORANDUM OPINION

Cognate BioServices, Inc. ("Cognate"), Healthbank, Inc. ("Healthbank"), Oncocidex, Inc. ("Oncocidex"), Theradigm, Inc. ("Theradigm"), and Vesta Therapeutics, Inc. ("Vesta"), (collectively "the Plaintiffs"), sued Alan K. Smith and Alan Smith Consulting, Inc. ("Alan Smith Consulting"), (collectively "the Defendants"), for violations of the Computer Fraud and Abuse Act,[1] misappropriation of products, and misappropriation of trade secrets. Pending are the Plaintiffs' motion for leave to file an amended complaint, the Defendants' motion for summary judgment, and third-party MacroCure's motion to vacate a magistrate judge's discovery order.[2] No hearing is necessary. See Local Rule 105.6 (D. Md. 2014). For the following reasons,

---

[1] 18 U.S.C. §§ 1030 et seq.

[2] The motion to vacate was filed in WDQ-14-2950, ECF No. 30.

the Plaintiffs' motion will be granted; the Defendants' motion
will be denied as moot; and MacroCure's motion will be denied.

I.    Background

    A.    Allegations in the Amended Complaint

The Plaintiffs are all Delaware corporations with their
principal places of business in Maryland.  ECF No. 36-3 at ¶¶ 1-
5.  Cognate is a contract service manufacturer and developer of
human cell therapy products and services in the biomedical
industry.  ECF No. 36-3 ¶ 11.  Healthbank is a customer of
Cognate engaged in the business of cryogenic storage of human
cell products.  *Id.* ¶ 15.  Oncocidex, Theradigm, and Vesta are
customers of Cognate engaged in the business of developing human
or veterinary cell therapy products and services in the
biomedical industry.  *Id.* ¶ 16.

The Plaintiffs have "spent valuable time, labor, and
substantial sums of money in creating and developing" their
Trade Secrets[3] and Trade Products.[4]  *Id.* ¶¶ 12, 17.   The

---

[3] The Plaintiffs define Trade Secrets as the:

> [V]arious   processes,   formulas,   designs,   systems,
> assays,  methods  and  techniques  relating  to  the
> manufacture, storage, handling, distribution and/or use
> of  human  and  veterinary  cell  therapy  products  and
> services that derive independent economic value, actual
> or  potential,  from  generally  not  being  known  to,  and
> not  being  readily  ascertainable  by  proper  means  by,
> other  persons  who  can  obtain  economic  value  from  their
> disclosure  or  use  and  that  are  the  subject  of  efforts
> reasonable under the circumstances to maintain secrecy.

Plaintiffs' Trade Products have "acquired a reputation of excellent quality" through the Plaintiffs' "quality work, long experience, and skill." Id. ¶ 13. The Plaintiffs' Trade Products and Trade Secrets are valuable and a source of substantial revenues and potential income. *See id.* ¶¶ 14, 18. The Trade Secrets were developed by Cognate on behalf of Healthbank, Oncocidex, Theradigm, and Vesta. *Id.* ¶ 20. The Plaintiffs devoted "great sums of money" to developing their Trade Secrets "which cannot be duplicated without improperly obtaining access to these Trade Secrets." *Id.* ¶ 19.

From December 2003 to May 2010, Smith was President and Chief Executive Officer ("CEO") for Cognate. ECF No. 36-3 ¶ 21.[5] While President and CEO, Smith "had access to and authority over others' access to [the] Plaintiffs' computer systems and all information contained therein, including the Trade Products and Trade Secrets owned by the Plaintiffs." *Id.* ¶ 24. Through his position, Smith owed a duty of confidentiality to the Plaintiffs, including "his obligation to maintain the strict

---

ECF No. 36-3 ¶ 17.

[4] The Plaintiffs define Trade Products as the "various processes, formulas, designs, systems, assays, methods, and techniques relating to the manufacture, storage, handling, distributions and/or use of human and veterinary cell therapy products and services." ECF No. 36-3 ¶ 12.

[5] Smith resides in Columbia, Maryland and regularly transacts business in Howard County, Maryland. ECF No. 36-3 ¶ 6.

security precautions to preserve the secret confidential and proprietary nature of Plaintiffs' processes, formulas, designs, systems, assays, documents[,] [] forms, methods, data, techniques, and other proprietary information constituting Plaintiffs' Trade Secrets and Trade Products." *Id.* ¶ 24.

At all relevant times, Cognate's computer systems stored confidential information owned by Cognate and its customers, including the Plaintiffs' Trade Secrets and Trade Products. ECF No. 36-3 ¶ 29. Cognate provided Smith with a Dell Laptop (the "Cognate Laptop") for his work as President and CEO. *Id.* ¶ 30. Cognate's employee handbook required Smith to return the Cognate Laptop and all passwords to Cognate at the end of his employment. *Id.* ¶ 31.[6] After Smith's resignation and termination in May 2010, he did not return the Cognate Laptop or the computer passwords. *Id.* ¶ 33.

On May 5, 2010, Smith "began serving as the head of U.S. operations for MacroCure." ECF No. 36-3 ¶ 25. MacroCure, Ltd. ("MacroCure") is an Israel based "biotechnology company focused

---

[6] Smith signed an acknowledgment that he received the employee handbook, that he was bound by its provisions, and that he had the responsibility to promptly read it. ECF No. 36-3 ¶ 32. "Smith has previously admitted under oath that he was aware that the Cognate employee handbook required him to return the Cognate Laptop and other proprietary materials upon termination of employment, and that he nonetheless failed to do so at the time of the termination of his employment or in the months thereafter." *Id.* ¶ 34.

4

on the development and commercialization of advanced cell therapy products." *Id.* ¶ 8.  Although MacroCure's principal place of business is in Israel, the Plaintiffs allege that it "employs a Production Manager in the United States," and "work[s] with the American Red Cross through its agent [] out of Philadelphia, and has otherwise engaged in interstate commerce in the United States through, *inter alia*, its [prior] contract with Cognate and its employment of Smith in Maryland." *Id.*  The Plaintiffs further allege:

> MacroCure hired Smith--himself a Maryland-based employee and Maryland resident--with knowledge and intent that Smith would use [the] Plaintiffs' trade secrets and products in his employment with MacroCure. . . . Smith acted as MacroCure's agent and within the scope of his employment when he accessed [the] Plaintiffs' computer systems without authorization for the purpose of obtaining Plaintiffs' proprietary information.   All of these trade secrets were misappropriated from [the] Plaintiffs' Maryland businesses, servers, and networks.

ECF No. 36-3 ¶ 8.[7]

On August 27, 2010, Smith formed Alan Smith Consulting, Inc., a biotechnology consulting service. *Id.* ¶ 26.[8]  On October

---

[7] Later in the complaint, the Plaintiffs allege that "MacroCure solicited and hired [] Smith with the knowledge and/or intent that Smith would continue to access [the] Plaintiffs' computer systems and/or make use of confidential and proprietary material that was or would be taken from [the] Plaintiffs."  ECF No. 36-3 ¶ 44.  Smith "improperly accessed [the] Plaintiffs' VPN and its server computers wherefrom he copied or otherwise accessed Trade Products and Trade Secrets" while "operating within the scope of his employment with MacroCure."  *Id.* at ¶ 45.

18, 2012, Smith returned the Cognate Laptop to Cognate.  *Id.* ¶ 36.  Smith never returned the computer passwords.  *Id.* ¶ 35. Smith and Alan Smith Consulting "provided and continue to provide biotechnology services to MacroCure."  *Id.* ¶ 26.

Smith knew his authority to use and access Cognate's computer systems was revoked upon the termination of his employment.  ECF No. 36-3 ¶ 35.  "Based on Plaintiffs' current and ongoing analysis of the Cognate Laptop, Smith accessed or attempted to access the Cognate network at least six times following his May 5 Termination—on May 6, 2010, May 19, 2010, June 5, 2010, June 29, 2010, August 5, 2010, September 29, 2010, and possibly on April 9, 2012."  *Id.* ¶ 37.  Smith "accessed more than 150 files from the Cognate servers" and "copied from the Cognate servers more than 100 files onto the Cognate Laptop." *Id.* (emphasis removed).

Smith "purchased a laptop paid for by MacroCure (the "MacroCure Laptop") just days after leaving Cognate in May 2010."  ECF No. 36-3 ¶ 41.  On May 25, 2010, "Smith used the Cognate Laptop to access MacroCure's internal network, from which he drafted an email message with the subject 'Process SOP Track Changes'— knowing (i) that [the] Plaintiffs consider their process [standard operating procedures ("SOPs")] to be among

---

[8] Alan Smith Consulting is a Utah corporation with its principal place of business in Maryland.  ECF No. 36-3 ¶ 7.

their most valuable and protected confidential Trade Secrets,
(ii) that [the] Plaintiffs have invested significant time and
resources in their development, (iii) that these SOPs are
valuable precisely because they are not widely known, and (iv)
that their disclosure would harm [the] Plaintiffs and place
[the] Plaintiffs at a competitive disadvantage." *Id.* ¶ 38.

On September 29, 2010, Smith connected an external drive to
the laptop.[9]   ECF No. 36-3 ¶ 37.   "[T]he Cognate Laptop contains
over 200 files with names identical to the files he accessed from
[the] external drive.   These files include Trade Secrets and
Trade Products belonging to Cognate's clients or prospective
clients, as well as MacroCure documents, evidencing an
intermingling of the above."[10]   *Id.*   "Smith [] sent the MacroCure
Laptop and the MacroCure External Drive to MacroCure employee
Idan Peer in Philadelphia, according to sworn statements by []
Peer in a prior proceeding."   Id. ¶ 42.   "As a result of []
Smith's unauthorized access of the Cognate Laptop, as well as
Plaintiffs' VPN and server computers . . . [the] Plaintiffs have
suffered losses within a one-year period aggregating more than

---

[9]The Plaintiffs allege that the drive was "owned or controlled by
MacroCure."   ECF No. 36-2 ¶ 41.

[10] "For example, one [standard operating procedure] that Smith
prepared for and provided to MacroCure within weeks of leaving
Cognate bears the MacroCure logo on the top of each page except
for one page on which Smith advertently left the Cognate logo."
ECF No. 36-3 ¶ 37.

five-thousand-dollars ($5,000) investigating and conducting a damage assessment of [the] Plaintiffs' computer systems." *Id.* ¶ 48.   The Plaintiffs allege that Smith, Alan Smith Consulting, and MacroCure "misappropriated [the] Plaintiffs' Trade Secrets and Trade Products" for MacroCure's use.   *Id.* ¶¶ 49-53.

B.   Procedural History

On June 19, 2013, the Plaintiffs sued Smith and Alan Smith Consulting for violations of the Computer Fraud and Abuse Act, misappropriation of products, and misappropriation of trade secrets.   ECF No. 1.   On March 13, 2014, the Court denied the Defendants' motion to dismiss for lack of jurisdiction or to stay the case.   ECF Nos. 21-22.   On April 7, 2014, the Court issued a Scheduling Order.   ECF No. 30.   The Order set May 27, 2014 as the deadline for joinder of additional parties and amendment of the pleadings.   *Id.*   On May 27, 2014, the Plaintiffs moved for leave to amend so that they could add MacroCure as a party.   ECF No. 36.   The Defendants opposed the motion.   ECF No. 43.   On June 24, 2014, the Plaintiffs replied. ECF No. 50.

On September 5, 2014, the Defendants moved for summary judgment and to stay proceedings pending a summary judgment ruling.   ECF Nos. 63-64.   The Plaintiffs opposed both motions. ECF Nos. 74, 76.   The Defendants replied.   ECF Nos. 78, 81.

C.    The Discovery Dispute

The Plaintiffs discovered that MacroCure was "engaged in developing a wound-healing product known as 'CureXcell.'"  ECF No. 121 at 4.  In July 2010, through Smith, MacroCure reached an agreement with the American Red Cross ("Red Cross") to manufacture CureXcell.  *Id.*  "In the course of performing this contract, the Red Cross has acknowledged that Smith was in constant contact with Red Cross employees and worked out of the Red Cross's manufacturing facility in Philadelphia . . . ."  *Id.* The Plaintiffs allege that "[a]s a result of the Red Cross's role as the manufacturer for MacroCure and its presence in the United States, the Red Cross possesses SOPs and other manufacturing evidence critical for determining the extent to which [the] Plaintiffs' proprietary SOPs and other materials were used by MacroCure in its U.S. manufacturing of CureXcell with the Red Cross."  *Id.* at 6.

On April 22, 2014, the Plaintiffs conferred with the Red Cross about the production of documents.  ECF No. 121 at 6. Concerned about confidentiality, the Red Cross sought and obtained a protective order.  *Id.*  "After it became apparent that MacroCure and the Red Cross would not meaningfully produce documents without a court order, on August 8, 2014, [the] Plaintiffs filed a motion to compel in the United States District Court for the District of Columbia."  *Id.* at 7; *see*

9

*Cognate Bioservices, Inc. v. Smith*, WDQ-14-2950-WDQ, ECF No. 1.
On September 9, 2014, MacroCure moved to intervene and quash the
subpoena. *Id.*, ECF No. 12.

On September 17, 2014, on agreement between the Plaintiffs
and the Red Cross, the motion to compel and motion to quash were
transferred back to this Court. *Id.*, ECF No. 12. However, the
discovery motions were not combined on the docket for this case;
instead, a new case number was created for these motions alone.
On September 22, 2014, the Court referred the motions to
Magistrate Judge Timothy J. Sullivan.[11] *Id.*, ECF No. 15.

On October 28, 2014, Judge Sullivan held a telephone
conference between the Plaintiffs, MacroCure, and the Red Cross.
*Id.*, ECF No. 24. Judge Sullivan "share[d] MacroCure's concern
[] that it would be unfair to require the production of
confidential information--particularly to an entity that
MacroCure identifies as a business competitor--without adequate
safeguards." *Id.* Judge Sullivan ordered the parties

> to confer in good faith to determine whether an
> agreement can be reached to address the following
> concerns: (1) Cognate should receive the discovery it
> seeks from the Red Cross, but the discovery must be
> narrowly tailored to its claims; (2) the Red Cross
> should not be subject to any undue burden in producing
> the discovery; and (3) MacroCure's confidentiality
> interests in the documents produced must be adequately
> protected.

---

[11] The Court had previously referred the initial case to Judge
Sullivan for discovery on May 22, 2014. ECF No. 35.

*Id.*

"The parties attempted to reach an agreement, but ultimately submitted competing proposed orders to [Judge Sullivan]." ECF No. 121 at 7; *see also* WDQ-14-2950, ECF No. Nos. 25, 25-3, 25-4. Judge Sullivan reviewed the proposals and determined "that the interests at stake in the production of the Red Cross documents are best addressed with a combination of the parties' proposed orders." *See* WDQ-14-2950, ECF No. 26. Judge Sullivan found:

> Cognate's proposed order outlines a process for the production of the Red Cross documents that ensures the timely production of the documents without imposing any significant burden on the Red Cross. MacroCure's proposed order (outlines a similar procedure, but I find that its process would not ensure the timely production of the documents to Cognate. In essence, MacroCure proposes that it produce the Red Cross documents to Cognate in a redacted form and permit Cognate's outside counsel to view unredacted documents only upon a good faith showing that the unredacted portions are relevant. MacroCure's proposed order would not permit Cognate's outside counsel to have an electronic copy of the documents, even though Cognate has expressed its intention to use computer software to analyze similarities between the Red Cross documents and other documents to determine whether their contents were misappropriated. While MacroCure's proposed procedure for the production of the documents would protect its confidentiality interests in the documents, the procedure would place an unnecessary burden on Cognate.

11

MacroCure rightly notes that "[i]n a world where a single inadvertent press of a button can result in the instantaneous publication of the most sensitive information, careful safeguards are warranted," particularly in a case such as this where Cognate and MacroCure are business competitors. I find that MacroCure's confidentiality concerns, however, may be addressed with a "simple addition to the protective order that restricts access to MacroCure's confidential information to Cognate's outside counsel and staff." MacroCure's proposed addition to the protective order restricts disclosure of the Red Cross documents to Cognate's outside counsel of record in this litigation and their internal staff. *This restriction on Cognate still permits it to obtain the discovery it seeks, and only burdens Cognate to the extent that it wishes to disclose the documents to a person other than its outside counsel.* In the event that this is necessary, the proposed language permits a party to apply to the Court "for lesser restrictions." *I find that this addition to the protective order appropriately addresses MacroCure's confidentiality interests without imposing a substantial burden on Cognate.*

*Id.* (citations omitted and emphasis added). Judge Sullivan ordered the Red Cross to produce the requested SOPs, forms, and other documents by November 21, 2014; he also denied the motion to compel and the motion to intervene as moot. *Id.*, ECF No. 27. Because those motions were the only ones associated with case number WDQ-14-2950, that civil case was terminated.[12]

---

[12] The Plaintiffs and MacroCure continued to file discovery motions under case number WDQ-13-1797. *See, e.g.*, ECF Nos. 136-137.

On November 20, 2014, MacroCure filed a motion to stay pending this Court's review of Judge Sullivan's order. *Id.*, ECF No. 28.  Judge Sullivan stayed a part of his discovery order, but ordered MacroCure "to produce redacted copies of the Red Cross Documents at issue . . . on or before November 24, 2014." *Id.*, ECF No. 29.  "Shortly before midnight on November 24, MacroCure produced [to the Plaintiffs] a single file containing 327 SOPs and related documents, with hand-marked redactions on over half of the documents."  ECF No. 121 at 8.

On November 28, 2014, MacroCure moved to vacate Judge Sullivan's November 14, 2014 order.  *See* WDQ-14-2950, ECF No. 30.  The Plaintiffs opposed the motion.[13]  On January 5, 2015, MacroCure replied.  *Id.*, ECF No. 34.

II.  Analysis

A.  Amending the Complaint

Federal Rule of Civil Procedure 15(a)(2) instructs that leave to amend should be freely given when justice requires. Leave should be denied only when amendment would unduly prejudice the opposing party, amount to futility, or reward the movant's bad faith.  *Steinburg v. Chesterfield Cnty. Planning Comm'n*, 527 F.3d 377, 390 (4th Cir. 2008); *Equal Rights Ctr. v. Niles Bolton Associates*, 602 F.3d 597, 603 (4th Cir. 2010).

---

[13] The Plaintiffs filed their opposition under both case numbers. *See* ECF No. 121; WDQ-14-2950, ECF No. 31.

"[A] court determining whether to grant a motion to amend to join additional [parties] must consider both the general principles of amendment provided by Rule 15(a) and also the more specific joinder provisions of Rule 20(a)." *Hinson v. Norwest Fin. S.C., Inc.*, 239 F.3d 611, 618 (4th Cir. 2011).  Under Rule 20(a)(2), a defendant may be joined if "any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and any question of law or fact common to all defendants will arise in the action."[14]  Courts should "entertain[] the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 734 (1966).

The Defendants are not prejudiced by the Plaintiffs' addition of MacroCure as a party.  The Plaintiffs filed within the Scheduling Order's deadline for joinder of additional parties and amendment of the pleadings.[15]  *See Nesbitt v. Univ. of Maryland Med. Sys.*, CIV. WDQ-13-0125, 2013 WL 2139514, at *2 (D. Md. May 14, 2013); *Paice LLC v. Hyundai Motor Co.*, CIV. WDQ-

---

[14] The Defendants do not argue that the Plaintiffs failed to meet the Rule 20 standard.  *See* ECF No. 43.

[15] Additionally, the Defendants have asserted in the past that MacroCure is a necessary party to the proceedings.  *See* ECF No. 23 at 14; ECF No. 57-1 at 2.  Thus, the addition of MacroCure as a party would not prejudice the Defendants.

14

12-0499, 2013 WL 6709023, *3 (D. Md. Dec. 17, 2013). Moreover, MacroCure has been extensively involved throughout the discovery process; thus, adding it as a party will not cause unnecessary delay.

The Defendants also assert that the motion should be denied because the amendment is futile. *See* ECF No. 43 at 4. The Defendants argue that the Court lacks personal jurisdiction over MacroCure because "[e]mploying an independent contractor residing in the forum, without more, is not sufficient to confer personal jurisdiction over an entity." *Id.*

In their opposition the Defendants attempt to show that personal jurisdiction does not exist based on their interpretation of the facts and adopting the standard of review used during a motion to dismiss for lack of jurisdiction. *See* ECF No. 43 at 4-7. To amend, however the Plaintiffs must only state some plausible ground on which the Court could exercise jurisdiction.[16] In other words, to succeed in their futility argument, the Defendants would need to show that there is *no possible basis* for personal jurisdiction over MacroCure.

_____

[16] *Cf. Davis v. Piper Aircraft Corp.*, 615 F.2d 606, 613-14 (4th Cir. 1980) ("Unless a proposed amendment may clearly be seen to be futile because of substantive or procedural considerations, conjecture about the merits of the litigation should not enter into the decision whether to allow amendment.") (internal citation omitted).

The Plaintiffs have stated grounds for personal jurisdiction, including that the Defendants (over whom the Court has personal jurisdiction), were acting as MacroCure's agents. *See* Md. Code Ann., Cts. & Jud. Proc. § 6-103(b) ("A court may exercise personal jurisdiction over a person, who directly *or by an agent* . . . .") (emphasis added).[17]  Although the Defendants have argued that they were merely "independent contractors," ruling on the merits of this argument now would be inappropriate--MacroCure has not yet been joined as a party and has not objected on the grounds of personal jurisdiction.  *See Davis,* 615 F.2d at 613-14   The Plaintiffs have carried their burden, and will be permitted to amend the complaint.

B.   The Defendants' Motion for Summary Judgment

"It is well settled that an amended pleading supersedes the original pleading, and that motions directed at superseded

---

[17] *See Nucor Corp. v. Bell*, 482 F. Supp. 2d 714, 723 (D.S.C. 2007) ("Considering the amended verified Complaint, the affidavits, and other evidence supporting jurisdiction, the court finds that Nucor has proven that SeverCorr has contacts with the forum related to the controversy such that imposition of specific personal jurisdiction is appropriate.  First, the amended verified Complaint asserts that SeverCorr, through its agent John Bell, interfered with Nucor's business relations by contacting and hiring several of its key employees in South Carolina.  The contacts within the forum of a party's agent, partner, or joint venturer may, in appropriate circumstances, be attributed to the party for purposes of establishing jurisdiction."); *see also Fatboy USA, LLC v. Schat*, No. 07CV965, 2009 WL 3756947, at *7 (M.D.N.C. Nov. 6, 2009); *Bus. Info. Sys. v. Prof'l Governmental Research & Solutions, Inc.*, No. 02CV00017, 2002 WL 32747668 (W.D. Va. Oct. 10, 2002).

pleadings are to be denied as moot." *Blount v. Carlson Hotels*,
3:11CV452-MOC-DSC, 2011 WL 6098697, at *1 (W.D.N.C. Dec. 6,
2011) (*citing Young v. City of Mount Ranier*, 238 F.3d 567, 573
(4th Cir. 2001) ("The general rule . . . is that an amended
pleading supersedes the original pleading, rendering the
original pleading of no effect.")).  Accordingly, the Court will
deny the Defendants' motion for summary judgment as moot.[18]

    C.   MacroCure's Motion to Vacate

    A district judge may refer nondispositive pretrial matters
to a magistrate judge for hearing and determination.  28 U.S.C.
§ 636(b)(1).  Under Fed. R. Civ. Pro. 72(a), a district judge
may "modify or set aside" the magistrate judge's order on a
nondispositive pretrial matter[19] if "any part of the order [] is

---

[18] The Defendants also filed a motion to stay proceedings pending
the ruling on the motion for summary judgment.  ECF No. 64.  The
Court will also deny that motion as moot.

[19] The Defendants argue that Judge Sullivan's decision was
dispositive because it resulted in the closure of case number
WDQ-14-2950, and the Court should review the decision *de novo*.
*See* WDQ-14-2950, ECF No. 30-2 at 8.  Judge Sullivan's order was
a normal discovery decision and was not dispositive--the case
continues to be litigated extensively by the parties and
MacroCure under WDQ-13-1797.  The Defendants' argument is based
on a technicality; that when the motion to compel and motion to
intervene were transferred back to this Court, the motions were
given a case number.  Further, even if WDQ-14-2950 was an
independent case, courts have held that closing a case that
commenced on a motion to compel is not a dispositive ruling.
*See Agincourt Gaming, LLC v. Zynga, Inc.*, No. 14-cv-0708-RFB-NJK,
2014 WL 4079555, at *2 (D. Nev. Aug. 15, 2014); *Feist v. RCN
Corp.*, No. 11-cv-5436, 2012 WL 4835038, at *1 (N.D. Cal. Oct. 4,

clearly erroneous or contrary to law." *See also* L.R. 301.5(a)
(D. Md. 2014). "Under the clearly erroneous standard, the
reviewing court is not to ask whether the finding is the best or
only conclusion permissible based on the evidence. Nor is it to
substitute its own conclusions for that of the magistrate
judge." *Huggins v. Prince George's Cnty.*, 750 F.Supp.2d 549,
559 (D. Md. 2010). Rather, the Court is "only required to
determine whether the magistrate judge's findings are reasonable
and supported by the evidence." *Id.* "It is not the function of
objections to discovery rulings to allow wholesale relitigation
of issues resolved by the magistrate judge." *Buchanan v.
Consolidated Stores Corp.*, 206 F.R.D. 123, 124 (D. Md. 2002).

Subpoenas of third-parties are governed by Federal Rule of
Civil Procedure 45. Under Rule 45(3)(B)(i), "[t]o protect a
person subject to or affected by a subpoena, the court for the
district where compliance is required *may*, on motion, quash or
modify the subpoena if it requires disclosing a trade secret or
other confidential research, development, or commercial
information." (emphasis added). Determining whether a motion to
quash should be granted under this rule is discretionary. *See
Richardson v. Sexual Assault/Spouse Abuse Research Ctr., Inc.*,
270 F.R.D. 223, 225 (D. Md. 2010); *Truswal Sys. Corp. v. Hydro-*

---

2012); *Verso Paper, LLC v. Hireright, Inc.*, No. 11-MC-628-CWR-
LRA, 2012 WL 2376046, at *4 (S.D. Miss. June 22, 2012).

*Air Eng'g, Inc.*, 813 F.2d 1207, 1210-11 (Fed. Cir. 1987).

Further, Rule 45 is also governed by the general discovery

principles of Rule 26(b)(1), which permits parties to "obtain

discovery regarding any nonprivileged matter that is relevant to

any party's claim or defense--including the existence,

description, nature, custody, condition, and location of any

documents or other tangible things and the identity and location

of persons who know of any discoverable matter."

"It is well settled that there is no absolute privilege

for trade secrets and similar confidential information; the

protection afforded is that if the information sought is shown

to be relevant and necessary, proper safeguards will attend

disclosure." 8A Wright & Miller, Fed. Prac. & Proc. § 2043 (3d

ed. 1998); *see also David v. Alphin*, No. 07cv11, 2010 WL

1404722, at *8 (W.D.N.C. Mar. 30, 2010) ("[T]he Federal Rules

provide no procedural device for unilateral redaction by a

party and it is a procedure that is not favored.") (citation

and quotation omitted).  Judge Sullivan recognized the

competing confidentiality and discovery concerns in this case.

*See* WDQ-14-2950, ECF No. 24.  He ordered the parties to confer

in good faith, and when they could not reach an agreement, he

considered their separate proposals.  *See id.*, ECF No. 26.

Judge Sullivan did not adopt either party's proposal; he

adopted procedures from each in order to address "the interests

at stake." *Id.*  Further, Judge Sullivan carefully explained his reasoning. *Id.*

Judge Sullivan's decision is not clearly erroneous or contrary to law; MacroCure is attempting "wholesale relitigation of issues resolved by the magistrate judge." *Buchanan v. Consolidated Stores Corp.*, 206 F.R.D. 123, 124 (D. Md. 2002).  Accordingly, the Court will deny the motion.

III. Conclusion

For the reasons stated above, the Plaintiffs' motion to amend the complaint will be granted; the Defendants' motion for summary judgment will be denied as moot; MacroCure's motion to vacate Judge Sullivan's discovery order will be denied.

3/17/15
Date

William D. Quarles, Jr.
United States District Judge