IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| COGNATE BIOSERVICES, INC., *et al.*, | * |
| Plaintiffs, | * |
| v. | *   Civil No. WDQ-13-1797 |
| ALAN K. SMITH, *et al.*, | * |
| Defendants. | * |

\* \* \* \* \* \*

## MEMORANDUM OPINION

Pending before the Court is the Motion for a Finding of Spoliation of Evidence ("Motion") (ECF No. 100) filed by Plaintiffs Cognate BioServices, *et al.* ("Cognate").[1] Defendants Alan K. Smith, *et al.* oppose the Motion. (ECF No. 112.) Having considered the submissions of the parties (ECF Nos. 100, 112 & 126), I find that a hearing is unnecessary. *See* Loc. R. 105.6. For the reasons set forth below, Cognate's Motion is **GRANTED IN PART**, **DENIED IN PART**, and **HELD SUB CURIA IN PART**.

## I.   BACKGROUND

From 2003 until May 2010, Defendant Alan K. Smith ("Smith") was employed as the CEO of Cognate. (ECF No. 100 at 8.) While employed by Cognate, Smith negotiated a contract between Cognate and Defendant MacroCure, Ltd. ("MacroCure") related to the development of an "immune cell wound-healing product known as 'CureXcell.'" (*Id.*) The relationship between Cognate and MacroCure to develop CureXcell, however, did not come to fruition. Instead, after leaving Cognate, Smith worked as a consultant for MacroCure on the development of CureXcell.

---

[1] On May 22, 2014, this case was referred to me for discovery and related scheduling matters (ECF No. 35).

(*Id.*) Cognate alleges that while Smith worked as a consultant for MacroCure, he accessed Cognate's computer systems without authorization and copied Cognate's proprietary materials, which he then produced to MacroCure. (*Id*. at 9.)

The litigation between Cognate and Smith has been going on for several years. (*See* ECF No. 100 at 7-8.) In March 2012, Smith and Cognate were involved in a lawsuit in Maryland state court. On June 19, 2013, Cognate filed a complaint in this Court against Smith and his consulting company, which alleged the misappropriation of Cognate's proprietary information. (ECF No. 1.) Cognate's complaint put "the materials Smith and Smith Consulting provided to MacroCure, their communications with MacroCure, and the scope of the Defendants' work for MacroCure" directly at issue. (ECF No. 100 at 10.)

Cognate's Motion asserts that Smith destroyed or failed to preserve relevant evidence contained on his MacroCure laptop, his personal notebooks, his MacroCure emails (contained on a smartphone), his personal emails, and certain emails and electronic documents in the possession of his daughter and employee, Cherise Smith. Cognate argues that Smith's conduct amounts to spoliation and that sanctions must be imposed. The Court will address Cognate's arguments as to each piece of lost or destroyed evidence separately.

## II.  DISCUSSION

The failure of a party "to preserve property for another's use as evidence in pending or reasonably foreseeable litigation" may amount to spoliation. *Silvestri v. General Motors Corp.*, 271 F.3d 583, 590 (4th Cir. 2001). A court may impose sanctions for spoliation based on its inherent authority, or based on a violation of a specific court order. *Victor Stanley, Inc. v. Creative Pipe, Inc.*, 269 F.R.D. 497, 517 (D. Md. 2010). Courts may impose sanctions for spoliation where a party shows that

(1) the party having control over the evidence had an obligation to preserve it when it was destroyed or altered; (2) the destruction or loss was accompanied by a "culpable state of mind;" and (3) the evidence that was destroyed or altered was "relevant" to the claims or defenses of the party that sought the discovery of the spoliated evidence, to the extent that a reasonable factfinder could conclude that the lost evidence would have supported the claims or defenses of the party that sought it.

*Id.* (quoting *Goodman v. Praxair Servs., Inc.*, 632 F. Supp. 2d 494, 509 (D. Md. 2009)).

### A.     Breach of the Obligation to Preserve Relevant Evidence

The first consideration in determining whether spoliation has occurred is whether a party breached its duty to preserve potentially relevant evidence. Once a party reasonably anticipates litigation, it is obligated to implement a "litigation hold" to ensure that potentially relevant evidence under its control is identified, located, and preserved for use in the anticipated litigation. *Goodman*, 632 F. Supp. at 494; *see also First Mariner Bank v. Resolution Law Group, P.C.*, No. MJG-12-1133, 2014 WL 1652550, at *8 (D. Md. Apr. 22, 2014). This duty includes the duty to preserve

> any documents or tangible things (as defined by [Fed. R. Civ. P. 34(a)]) made by individuals "likely to have discoverable information that the disclosing party may use to support its claims or defenses." The duty also includes documents prepared *for* those individuals, to the extent those documents can be readily identified (*e.g.,* from the "to" field in e-mails). The duty also extends to information that is relevant to the claims or defenses of *any* party, or which is "relevant to the subject matter involved in the action." Thus, the duty to preserve extends to those employees likely to have relevant information—the "key players" in the case.

*Goodman*, 632 F. Supp. 2d at 511-12.

Smith had a duty to preserve potentially relevant evidence that began no later than June 19, 2013, which is the date the complaint was filed in this case.[2] Cognate alleges that Smith failed to preserve five types of evidence: his notebooks, his MacroCure laptop, his cell phone, his

---

[2] Smith's duty to preserve likely arose well before 2013, as the subject matter of Cognate's claims in the state court litigation was the same as in this case. (*See* ECF No. 112 at 4-5.)

personal emails and his company emails. Before moving on to the next consideration, it is necessary to determine whether any of these items should have been preserved.

During the time that Smith worked as a consultant for MacroCure, he "had a practice of recording notes in notebooks." (ECF No. 100 at 13.) The notes that he wrote in his notebooks included notes from meetings at MacroCure and his "to do" lists. (*Id.* at 14.) Smith kept notes in at least two notebooks. (*Id.*). In August 2013, Smith destroyed his notebooks "as per instructions in [his] termination agreement with [MacroCure]." (ECF No. 100 at 14.) I find that Smith's notebooks were potentially relevant to Cognate's claims in this case and that he had an obligation to preserve them that began no later than June 19, 2013. The nature of the work Smith performed for MacroCure is a substantial issue in this case. Smith's contemporaneous notes of the work he was doing for MacroCure, as well as his notes of the topics discussed during the meetings he attended, are clearly relevant to Cognate's claims. Smith's obligation to preserve the notebooks is grounded in the Federal Rules of Civil Procedure and legal precedent in the Fourth Circuit, and his destruction of the notebooks is not excused by his agreement with MacroCure to return or destroy MacroCure materials. Smith's destruction of his notebooks in August 2013 breached his obligation to preserve the notebooks.

Smith used a laptop computer ("the laptop") while he worked as a consultant for MacroCure. Because it contains the work that Smith performed for MacroCure, the relevance of the documents contained on the laptop is readily apparent and not in dispute. What is in dispute, however, is whether Smith breached his duty to preserve the laptop by returning it to MacroCure. After Cognate filed its complaint in this case, but before a scheduling order was entered, Cognate filed a Motion to Preserve Evidence (ECF No. 16). Cognate's motion sought an order requiring Smith to preserve the laptop for discovery in this case. Around the time that Cognate's motion

was filed (it is not clear exactly when), Smith returned the laptop to a MacroCure employee in Pennsylvania. After Smith reviewed Cognate's motion, he communicated to the MacroCure employee a request that the contents of the laptop be preserved for use in this case, which the MacroCure employee agreed to do. Judge Quarles denied Cognate's motion, finding that Smith complied with his duty to preserve potentially relevant evidence by providing Cognate with the contact information for the person in possession of the laptop, and requesting that documents not be deleted from the laptop. (ECF No. 21.) For unknown reasons, MacroCure shipped the laptop to Israel. The laptop remains in Israel, where it is the subject of a separate proceeding initiated by this Court to have the laptop returned to the United States for use in this case.

The Fourth Circuit discussed the doctrine of spoliation of evidence and what a party must do to fulfill its duty to preserve relevant evidence in *Silvestri*. The court stated that "[i]f a party cannot fulfill [the] duty to preserve because he does not own or control the evidence, he still has an obligation to give the opposing party notice of access to the evidence or of the possible destruction of the evidence if the party anticipates litigation involving that evidence." *Silvestri*, 271 F.3d at 591. In *Silvestri*, a plaintiff was injured after the airbags in his borrowed vehicle purportedly failed to deploy following an accident. 271 F.3d at 586. Before filing suit against the vehicle's manufacturer, the plaintiff returned the vehicle to its owner, who repaired the vehicle and then sold it. At no point did the plaintiff give the defendant the opportunity to inspect the vehicle. *Id.* at 587. The district court granted summary judgment in favor of the defendant based on its finding that the plaintiff had spoliated evidence. *Id.* at 589. On appeal, the plaintiff argued that he had no duty to preserve the vehicle because he did not own it, and that he had not intended to destroy any relevant evidence. The Fourth Circuit found that although the plaintiff did not own the vehicle, "nor did he even control it in a legal sense after the accident because the

vehicle belonged to his landlady's husband," he nonetheless had access to the vehicle. *Id.* This was demonstrated by the fact that the plaintiff, his attorney, and his retained experts were "given apparently unlimited access to the vehicle for inspection purposes." *Id.* Because the plaintiff intended to file a lawsuit from the beginning, he was "fully aware that the vehicle was material evidence in that litigation." *Id.* at 592. By failing to either preserve the vehicle in its purportedly defective state or notify the vehicle's manufacturer of the availability of the evidence for inspection, the plaintiff's conduct amounted to spoliation. *Id.*

Here, unlike the plaintiff in *Silvestri*, Smith's conduct with respect to the laptop does not amount to a breach of his obligation to preserve relevant evidence. First, unlike the vehicle at issue in *Silvestri*, the evidence on the laptop in this case has not been lost or destroyed. Although Cognate has, to this point, been unable to obtain the laptop from MacroCure in Israel, the laptop still exists and there is no reason for the Court to find that its contents have been altered.[3] Second, even assuming that hindering a party's ability to obtain relevant evidence by shipping the evidence Israel could amount to the "loss or destruction" of evidence, I have no basis to find that Smith knew that the laptop would be removed from the United States. MacroCure's efforts to obstruct Cognate's ability to inspect the laptop cannot be imputed to Smith on the facts before the Court. Because I find that Smith did not breach his obligation to preserve the laptop, there can be no finding at this time that Smith committed spoliation with respect to the laptop.

Smith used a Motorola smartphone to access his MacroCure email account. (ECF No. 112 at 7.) According to Smith, the smartphone did not "sync with the emails in his inbox indefinitely," but instead "only displayed emails for a limited period of time." (*Id.*) Smith

---

[3] If Cognate ultimately obtains the laptop from MacroCure and finds that its contents were altered after Smith's duty to preserve relevant evidence was triggered, Smith may at that time be subject to sanctions for spoliation in connection with the laptop.

disposed of his smartphone in July 2013. (*Id.*) Smith states that "it is unlikely that any relevant email existed on [the] smartphone" in July 2013, and that even if the phone contained relevant emails, the MacroCure laptop would contain them as well. (*Id.*) Of course, because Smith discarded his smartphone without locating and preserving any potentially relevant emails it contained, and with the MacroCure laptop unavailable to Cognate, the potentially relevant emails contained on the smartphone are effectively lost. Smith should have either (1) made a copy of the emails that were available to him on the smartphone before discarding it, (2) provided the smartphone to MacroCure (along with the laptop) and requested that its contents be preserved for use in this case, or (3) provided Cognate with an opportunity to inspect the smartphone before it was discarded. I find that Smith had a duty to preserve the potentially relevant emails contained on the smartphone that began no later than June 19, 2013. Smith breached his duty to preserve relevant evidence by discarding the smartphone in July 2013.

Smith used "several personal email accounts from 2002 through the present." (ECF No. 100 at 15.) For approximately one month (around June 2010), Smith used his personal email accounts in his consulting with MacroCure. (*Id.*) Yet despite Cognate's discovery requests, Smith has "failed to produce a single communication with MacroCure from any computer or email account." (*Id.* at 16.) While Smith does not address Cognate's argument on this point in his response, I do not find that Cognate has shown that Smith breached his duty to preserve potentially relevant evidence contained in his personal email accounts. First, it is not clear that any emails have actually been lost from Smith's personal email accounts. Second, even assuming that some of Smith's personal emails have been deleted or lost, it is just as likely that this occurred before his obligation to preserve potentially relevant evidence began. There is no evidence that any loss or deletion occurred after Smith's obligation to preserve relevant evidence

7

was triggered. Given this finding, Smith cannot be found to have committed spoliation with respect to his personal email accounts.

Cherise Smith is Smith's daughter and was an agent or employee of Alan Smith Consulting, Inc. at all times relevant to Cognate's claims. During her deposition, Cherise Smith stated that she created documents containing standard operating procedures ("SOPs") for MacroCure. It was Cherise Smith's practice to delete the documents that she created after emailing them to Smith. (ECF No. 100-4 at 116.) In addition to deleting documents on her computer, Cherise Smith also testified that it was her practice to delete "a lot" of emails, and that her email account was set up to automatically delete emails sent from the account after a certain number of emails had been sent. (*Id.* at 117.) According to Cherise Smith, as of October 10, 2014, she had not been instructed to preserve computer files and emails relating to her work for MacroCure. (*Id.* at 120.) Cherise Smith stated that when she was "done working with Dr. Smith for MacroCure, [she] deleted almost everything that [she had]." (*Id.* at 116.) Beginning sometime in "maybe 2013," on her own initiative Cherise Smith stopped deleting computer files and emails that she received. (*Id.* at 122.) I find that Smith and Defendant Alan Smith Consulting, Inc. failed to institute a litigation hold from at least June 19, 2013, and that this resulted in Cherise Smith's continued deletion of documents and emails after this date. This was a breach of Smith's obligation to preserve relevant evidence.

In summary, I find that Smith breached his obligation to preserve relevant evidence in connection with his notebooks, his smartphone, and the evidence that was in Cherise Smith's possession in the form of emails and electronic documents. I do not find that Smith breached his obligation to preserve relevant evidence in connection with the laptop or his personal emails, and accordingly deny the Motion as to those items.

### B. Culpability

The second consideration in the spoliation analysis is whether the party's loss or destruction of the potentially relevant evidence was accompanied by a culpable state of mind. "In the Fourth Circuit, for a court to impose some form of sanctions for spoliation, any fault—be it bad faith, willfulness, gross negligence, or ordinary negligence—is a sufficiently culpable mindset." *Turner v. United States*, 736 F.3d 274 (4th Cir. 2013) (citing *Victor Stanley*, 269 F.R.D. at 529). In the context of spoliation, ordinary negligence is the failure to identify, locate, and preserve evidence, where a reasonably prudent person acting under like circumstances would have done so. *See In re Ethicon, Inc. Pelvic Repair Sys. Prod. Liab. Litig.*, 299 F.R.D. 502, 519 (S.D. W. Va. 2014). A finding of gross negligence requires a similar showing as ordinary negligence, but to a greater degree. *Id.* Willfulness and bad faith will only be found where a party has engaged in "intentional, purposeful, or deliberate conduct." *Id.* (quoting *Victor Stanley*, 269 F.R.D. at 529). While bad faith requires the destruction of evidence "for the purpose of depriving the adversary of the evidence," *Goodman*, 632 F. Supp. 2d at 520, willfulness only requires a demonstration of intentional or deliberate conduct resulting in spoliation. *Buckley v. Mukasey*, 538 F.3d 306, 323 (4th Cir. 2008).

While I find that Smith's destruction of his notebooks and smartphone were willful, there is not sufficient information before the Court at this time to support a finding of bad faith. Smith's destruction of these items, albeit misguided and a breach of his duty to preserve potentially relevant evidence, is likely related to his agreement with MacroCure that required him to "return or destroy" any MacroCure materials. As stated above, while this agreement—to which neither Cognate nor this Court were parties—does not supersede Smith's obligation to preserve potentially relevant evidence, it may provide some context for Smith's misconduct. In

any case, I find that Smith's destruction of the notebooks and smartphone were willful, but do not find that he discarded the items in bad faith.

Smith's failure to institute a litigation hold at Alan Smith Consulting, Inc. amounts to gross negligence. *See Victor Stanley*, 269 F.R.D. at 529-30 (citing *Jones v. Bremen High Sch. Dist. 228*, No. 08-3548, 2010 WL 2106640, at *9 (N.D. Ill. May 25, 2010)). Under the circumstances of this case, a reasonably prudent person in Smith's position would have instituted some sort of litigation hold. At a minimum, as applied to Cherise Smith, this litigation hold would have required her to (1) stop deleting computer documents and emails related to Smith's work for MacroCure and (2) modify her email account settings so that emails sent from her account would not be deleted automatically or establish a protocol for manually backing up emails that contained potentially relevant information. Had Smith instituted any litigation hold— even a less-than-ideal litigation hold— the circumstances might have warranted a finding of regular negligence. *See Victor Stanley*, 269 F.R.D. at 529. Under the present circumstances, however, Smith's complete failure to take any steps to ensure that potentially relevant evidence was not deleted by Cherise Smith and her email provider as a matter of course was grossly negligent.

In summary, I find that Smith's destruction of his notebooks and smartphone was willful. I find that Smith's failure to institute a litigation hold for the preservation of Cherise Smith's emails and electronic documents was grossly negligent.

**C.     Relevance**

The final consideration in determining whether spoliation has occurred is the relevance of the spoliated evidence. "The test for relevance for purposes of establishing the third element is somewhat more stringent than merely meeting the standard provided in Federal Rule of Evidence

401." *Sampson v. City of Cambridge, Md.*, 251 F.R.D. 172, 179 (D. Md. 2008). In the context of spoliation, lost or destroyed evidence is relevant if "a reasonable trier of fact could conclude that the lost evidence would have supported the claims or defenses of the party that sought it." *Victor Stanley*, 269 F.R.D. at 531 (internal citations omitted). In addition, in order for a court to impose sanctions, "the absence of the evidence must be prejudicial to the party alleging spoliation." *Id.* ("Put another way, a finding of 'relevance' for purposes of spoliation sanctions is a two-pronged finding of relevance and prejudice."). When a party alleging spoliation shows that the alleged spoliator acted willfully or in bad faith in failing to preserve the evidence, "the relevance of that evidence is presumed in the Fourth Circuit." *Id.* at 532. Even where the relevance of spoliated evidence is presumed, however, "the spoliating party may rebut this presumption by showing that the innocent party has not been prejudiced." *Id.* (internal quotation omitted).

Because I have found that Smith willfully destroyed his notebooks and smartphone, the relevance of the evidence contained on those items is presumed. *See Victor Stanley*, 269 F.R.D. at 532; *see also Sampson*, 251 F.R.D. at 179. Even putting aside this presumption, I find that the notebooks and smartphone contained information that was relevant to Cognate's claims in this case.

The notebooks contained Smith's contemporaneous notes and task lists related to the work he performed for MacroCure. Smith's argument that "[t]hey did not contain information relevant to this case" is unsupported (and contradicted by Smith's own description of the notebooks). His argument that the notebooks did not contain information "responsive to Cognate's discovery requests" applies the wrong standard. Smith's own notes about the tasks he performed for MacroCure, the persons at MacroCure who asked him to perform those tasks, and his other notes relating to his work as a consultant for MacroCure are plainly relevant. A

reasonable factfinder could conclude that Smith's notebooks would support Cognate's claims.

Smith presents two arguments in support of his position that the smartphone did not contain relevant information. First, he states that because the core facts underlying Cognate's claims occurred in 2011, the only emails that would be potentially relevant would have likely been sent or received around that time, and would probably not have existed on the phone in 2013.[4] This may be the case, but Cognate points to two SOPs implemented in 2013 that are potentially relevant to Cognate's claims. Emails concerning these SOPs likely existed on the smartphone when Smith's duty to preserve arose on June 19, 2013. Second, Smith argues that when he stopped working as a consultant for MacroCure, his access to his MacroCure email was disabled. But Smith left MacroCure in July 2013, several weeks after his duty to preserve potentially relevant evidence arose. He took no steps during that time to ensure that the relevant emails contained on his smartphone would be preserved for use in this case. In addition, Cognate has presented persuasive evidence to contradict Smith's statement that his access to his MacroCure email account was disabled in July 2013 (*see* ECF No. 126 at 6), suggesting that Smith is mistaken on this point. A reasonable factfinder could conclude that Smith's smartphone contained relevant evidence that would support Cognate's claims.

I also find that the emails and documents that Cherise Smith deleted as a result of Smith's failure to institute a litigation hold were relevant. Cherise Smith worked with Smith on a number of documents related to Smith's work for MacroCure. At least some of these documents, likely including relevant SOPs, were transmitted by email. (ECF No. 100-4 at 116.) Smith does not present any argument as to why the emails and documents that Cherise Smith deleted are not

---

[4] While Smith states in his declaration that he does not recall precisely how long his phone displayed emails in his MacroCure account, he is "certain that it was for less than eighteen months." (ECF No. 112-2 at 3.)

relevant. Instead, he rests his argument on the suggestion that Cherise Smith did not delete any emails after June 19, 2013, which I reject. A reasonable factfinder could conclude that Cherise Smith's deleted emails and electronic documents contained relevant evidence that would support Cognate's claims.

In summary, I find that Smith's notebooks, Smith's smartphone, and Cherise Smith's deleted emails and electronic documents were relevant to Cognate's claims.

### D.     Prejudice

In order for a Court to impose sanctions upon a spoliator, the misconduct must have caused prejudice to the opposing party. *Victor Stanley*, 269 F.R.D. at 532. A party is prejudiced by the spoliation of evidence where the party's ability to present its case is compromised as a result of the missing evidence. *Id.* (noting that "[p]rejudice can range along a continuum from an inability to prove claims to little or no impact on the presentation of proof") (internal quotation omitted).

With respect to the notebooks, the prejudice is clear. Cognate will be unable to cross-examine Smith with the assistance of the notes, which might have allowed Cognate to point out areas that Smith had misremembered or misstated what he did while working for MacroCure. *See Reed v. Honeywell Intern., Inc.*, No. 07-0396, 2009 WL 886844, at *11 (D. Az. Apr. 27, 2009) ("The notes could have revealed inconsistencies in his testimony about what the witnesses told him and might have revealed any exaggerations or mistakes in memory."). If the notebooks contained information on topics not known to Cognate, Cognate's review of the notebooks would have permitted it to further inquire about these topics and obtain information that they otherwise would not have sought to obtain. The notebooks may also have contained Smith's notes on how he misappropriated proprietary information from Cognate, which would have been

useful in Cognate's case in chief as evidence of Smith's misappropriation. Smith's destruction of his notebooks warrants the imposition of sanctions.

Determining the amount of prejudice to Cognate from Smith's destruction of the emails contained on his smartphone and his failure to preserve Cherise Smith's emails and electronic documents is more complicated. Unlike the notebooks, the contents of which are lost forever, the emails that were contained on Smith's smartphone and Cherise Smith's email account may still exist. To the extent that Smith is able to recover these emails and produce them to Cognate, it would be in his interest to do so. This would tend to cure most of the prejudice to Cognate. *But see Nutramax Labs., Inc. v. Theodosakis*, No. CCB-08-879, 2009 WL 2778388, at *7 (D. Md. June 8, 2009) ("While the adversarial process imposes investigatory burdens on both parties, a party cannot hide or alter evidence in an attempt to escape liability and then seek to avoid sanctions by relying on the opposing party's good fortune in discovering that evidence."); *Jones*, 2010 WL 2106640, at *8-9 (finding that a delayed production of evidence amounted to prejudice). If, however, he is unable to recover the emails (either because they are no longer available to him or because he wishes to obstruct Cognate's efforts to obtain relevant evidence in this case), and assuming that Cognate does not obtain them from another source, his destruction of the emails will have caused prejudice to Cognate, and will warrant sanctions.

E.   **Sanctions**

"Spoliation sanctions should be molded to serve the prophylactic, punitive, and remedial rationales underlying the spoliation doctrine." *Goodman*, 632 F. Supp. 2d at 523 (internal quotation omitted). Federal courts may impose a number of types of sanctions for spoliation: "assessing attorney's fees and costs, giving the jury an adverse inference instruction, precluding evidence, or imposing the harsh, case-dispositive sanctions of dismissal or judgment by default."

*Victor Stanley*, 269 F.R.D. at 533 (citing *Goodman*, 632 F. Supp. 2d at 506). A court must "impose the least harsh sanction that can provide an adequate remedy." *Id.* at 534 (quoting *Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec.*, 685 F. Supp. 2d 456, 469 (S.D.N.Y. 2010)).

Here, Smith willfully destroyed evidence that was relevant to this case, and was grossly negligent in failing to ensure that other relevant evidence was preserved. The destruction of Smith's notebooks is prejudicial to Cognate and warrants the imposition of sanctions against Smith. Accordingly, as other courts have done, I recommend that at the time of trial, the presiding judge consider an adverse jury instruction to level the evidentiary playing field that might otherwise favor Smith as a result of his destruction of this evidence.[5] *See Reed*, 2009 WL 886844 at *11; *Goodman*, 632 F. Supp. at 525 (D. Md. 2009) (internal quotation omitted) ("The precise contours of the adverse jury instruction are best reserved for determination by [the presiding district judge] in making the jury charge for trial."); *Chan v. Triple 8 Palace, Inc.*, No. 03-6048, 2005 WL 1925579, at *10 (S.D.N.Y. Aug. 11, 2005) (noting that it may be appropriate for the Court to "draw on the adverse inference when determining dispositive motions").

With respect to the emails lost as a result of Smith's destruction of his smartphone and his failure to institute a litigation hold for Cherise Smith's emails and electronic documents, the issue of sanctions depends on the prejudice to Cognate. As explained above, if Cognate is able to obtain a copy of Smith's emails from Smith or another source, the prejudice is largely cured. If

---

[5] As Judge Grimm noted in *Victor Stanley*, "resolution of spoliation motions takes a toll on the court, separate from that extracted from the litigants, for which there is no satisfactory remedy short of criminal contempt proceedings." 269 F.R.D. 497 at 528. Smith's conduct does not rise to the level of criminal contempt, but I express my frustration here of Smith's serious misconduct, which has wasted a great deal of the Court's time without advancing the abilities of the parties to have this case resolved on its merits.

not, sanctions should be imposed against Smith in an effort to ensure that his misconduct does not give him an unfair evidentiary advantage over Cognate. These sanctions, like the sanction for Smith's destruction of his notebooks, should be decided by the judge who presides over this trial.[6]

I will hold sub curia Cognate's request for an award of reasonable attorney's fees for the efforts undertaken in relation to Smith's spoliation. It would be more appropriate to consider what attorney's fees, if any, should be awarded to Cognate once the full extent of the prejudice to Cognate caused by Smith's spoliation is known and appropriate sanctions have been imposed.

### III.   CONCLUSION

For the reasons set forth above, Cognate's Motion is **GRANTED IN PART**, **DENIED IN PART**, and **HELD SUB CURIA IN PART**. The Motion is granted to the extent that it seeks a finding that Smith committed spoliation by destroying his notebooks and the emails contained on his smartphone, and by failing to take steps to preserve the evidence in Cherise Smith's possession. The Motion is denied as to Smith's alleged spoliation of the laptop and the emails in his personal email accounts. The Motion is held sub curia with respect to a determination of the appropriate sanctions to be imposed, as well as whether an award of Cognate's attorney's fees is appropriate.

An Order implementing this decision will be entered separately.

<u>August 31, 2015</u>                               <u>         /s/                                        </u>
Date                                                        Timothy J. Sullivan
                                                                United States Magistrate Judge

---

[6] With respect to the loss of Cherise Smith's emails and electronic documents, an adverse jury instruction would not be a permitted sanction under Fourth Circuit precedent in the absence of a finding that Smith's conduct was willful. *See Victor Stanley*, 269 F.R.D. at 536 (citing *Goodman*, 632 F. Supp. 2d at 519). Other sanctions, including the exclusion of evidence and an assessment of attorney's fees and costs, are permitted.