## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| | : | |
| COGNATE BIOSERVICES, INC. | : | |
| | : | |
| v. | : | Civil No. CCB-13-1797 |
| | : | |
| ALAN K. SMITH | : | |
| | : | |

## MEMORANDUM

Cognate Bioservices, Inc. ("Cognate"), along with Healthbank, Inc., Oncocidex, Inc., Theradigm, Inc., and Vesta Therapeutics, Inc. (individually, "Healthbank," "Oncocidex," "Theradigm," and "Vesta"; collectively, "the non-Cognate plaintiffs"), have sued Alan K. Smith and Alan Smith Consulting, Inc. (individually, "Smith" and "Smith Consulting"; collectively, "the Smith defendants"), and MacroCure, Ltd. ("MacroCure"), alleging (1) violations of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 ("CFAA"); (2) misappropriation of products; and (3) misappropriation of trade secrets in violation of the Maryland Uniform Trade Secrets Act, Md. Code Ann., Com. Law §§ 11-1201 to 11-1209 ("MUTSA"). Now pending before the court are the defendants' motions to dismiss or, in the alternative, for summary judgment on res judicata grounds; MacroCure's motions to dismiss for lack of personal jurisdiction and for failure to state a claim; and two motions related to discovery. No oral argument is necessary. *See* Local Rule 105.6 (D. Md. 2014). For the reasons that follow, the defendants' motions to dismiss or, in the alternative, for summary judgment on res judicata grounds will be granted. The other pending motions to dismiss, and the discovery motions, will be denied as moot.[1]

## BACKGROUND

Cognate is a contract service manufacturer and developer of human cell therapy products

---

[1] The court also will grant the parties' unopposed motions to seal, (ECF Nos. 166, 172, 183, 194, 198, 212).

and services in the biomedical industry, and the non-Cognate plaintiffs are customers of Cognate. (Am. Compl. ¶¶ 11, 15, 16, ECF No. 148.) According to the amended complaint, the plaintiffs have invested substantial time and money in developing trade products and trade secrets, including some Cognate developed on behalf of the plaintiffs. (*Id.* ¶¶ 12-14, 17-20.) Cognate's computer systems store confidential data and information owned by Cognate and its customers, including the plaintiffs' trade products and trade secrets. (*Id.* ¶ 29.)

Smith was President and Chief Executive Officer of Cognate from December 2003 until May 2010. (*Id.* ¶ 21.) In May 2010, he resigned from his position at Cognate and began serving as "the head of U.S. operations" for MacroCure, an Israeli biotechnology company. (*Id.* ¶¶ 8, 21, 25.) In August 2010, Smith formed a wholly-owned company, Smith Consulting, to provide consulting services to the biotechnology industry, including but not limited to MacroCure. (*Id.* ¶ 26.) The plaintiffs allege that, upon his resignation, Smith failed to return his computer passwords and the laptop Cognate had provided him in connection with his employment ("the Cognate laptop"), as required by the Cognate employment handbook. (*Id.* ¶¶ 30, 31, 33.) Instead, the plaintiffs allege that, following his resignation, Smith accessed or attempted to access the Cognate network at least six times, copied many proprietary files from the Cognate servers and its virtual private network ("VPN") to the Cognate laptop, transferred the plaintiffs' proprietary information from the Cognate laptop to an external drive owned or controlled by MacroCure (the "MacroCure external drive"), and then accessed and used this information from a laptop MacroCure provided him ("the MacroCure laptop"). (*Id.* ¶¶ 37, 41, 45, 46.) The Cognate laptop was returned to Cognate on October 18, 2012, but the plaintiffs have not received access to the MacroCure external drive or laptop, which they allege is part of an effort by the defendants to shield these devices from discovery by the plaintiffs. (*Id.* ¶¶ 36, 42.) The plaintiffs allege that

2

Smith's intent was to make use of this proprietary information for the benefit of the defendants, and that MacroCure hired Smith with the intent that he would unlawfully access and use the plaintiffs' proprietary information. (*Id.* ¶¶ 41, 44, 49, 52, 53.)

In 2012, Smith sued Cognate,[2] Toucan Capital Fund II LP, Linda Powers ("Powers"), and Robert Hemphill ("Hemphill") in Circuit Court for Baltimore County. (Circuit Court Docket Sheet.) Smith alleged that Cognate violated Maryland wage laws by failing to pay him salary and accrued unused vacation that he was owed, and that he should be indemnified for money that was garnished from his bank account to pay a California tax liability. (Circuit Court Verdict Sheet, ECF No. 63-6.) In June 2013, Cognate filed its Second Amended Counterclaims against Smith, alleging that Smith was liable to Cognate for constructive fraud, trover and conversion, breach of contract, misappropriation of trade secrets, and misappropriation of products. (Second Amended Counterclaims, ECF No. 63-3.) A jury trial in the Circuit Court occurred in February and March of 2014. (Circuit Court Docket Sheet.) On March 6, 2014, the jury found in favor of Smith on all his claims, awarding him several hundreds of thousands of dollars in damages, and found against Cognate on all its counterclaims. (Circuit Court Verdict Sheet.)

In June 2013, while the state court case was pending, the plaintiffs in this case filed their complaint, which they amended on March 17, 2015. (Original Compl., ECF No. 1; Am. Compl.) On April 16, 2015, the Smith defendants filed a motion to dismiss or, in the alternative, for summary judgment on res judicata grounds, to which MacroCure has signed on, arguing that the state court action precludes the plaintiffs from bringing this suit in federal court. (Smith Res Judicata Mot., ECF No. 164; MacroCure Res Judicata Mot. 173.) The plaintiffs responded, (Res Judicata Resp. Opp'n, ECF No. 180), and the defendants replied, (Smith Reply, ECF No. 189;

---

[2] In the state court litigation, Smith sued Cognate Bioservices, Inc. and Cognate Therapeutics, Inc. (Circuit Court Docket Sheet, ECF No. 63-2.) The parties in that case agreed that they were the same entity and that Cognate Therapeutics, Inc. no longer existed. (Smith Res Judicata Mot. Ex. 1-A, Pretrial Tr. 133-34.)

MacroCure Reply, ECF No. 191). On April 27, 2015, MacroCure filed a motion to dismiss for lack of personal jurisdiction, (Personal Jurisdiction Mot., ECF No. 170), and a motion to dismiss for failure to state a claim under the CFAA, (CFAA Mot., ECF No. 174), to which the Smith defendants signed on in a motion styled as a "response," (Smith Resp., ECF No. 179). The plaintiffs have opposed both motions. (Personal Jurisdiction Resp. Opp'n, ECF No. 184; CFAA Resp. Opp'n, ECF No. 185). Also pending is MacroCure's July 10, 2015, motion to stay discovery, (Mot. Stay Disc., ECF No. 200), on which Judge Sullivan has issued a report and recommendation, (R. & R., ECF No. 214), and the Smith defendants' motion to set aside Judge Sullivan's opinion on Smith's alleged spoliation of evidence, (Mot. Set Aside, ECF No. 210).[3]

For the reasons that follow, the defendants' motions to dismiss or, in the alternative, for summary judgment on res judicata grounds will be granted. The other motions to dismiss and the discovery motions, therefore, will be denied as moot.

## ANALYSIS

I.    Standard of Review

The defendants have moved to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment under Fed. R. Civ. P. 56. A court considers only the pleadings when deciding a Rule 12(b)(6) motion. Where the parties present matters outside of the pleadings and the court considers those matters, as here, the motion is treated as one for summary judgment. *See* Fed. R. Civ. P. 12(d); *Gadsby by Gadsby v. Grasmick*, 109 F.3d 940, 949 (4th Cir. 1997); *Paukstis v. Kenwood Golf & Country Club, Inc.*, 241 F. Supp. 2d 551, 556 (D. Md. 2003). "There are two requirements for a proper Rule 12(d) conversion." *Greater Baltimore Ctr. for Pregnancy Concerns, Inc. v. Mayor and City Council of Baltimore*, 721 F.3d 264, 281 (4th Cir. 2013). First, all parties must "be given some indication by the court that it is

[3] This case was transferred to me on January 14, 2016, following the retirement of Judge William D. Quarles, Jr.

treating the 12(b)(6) motion as a motion for summary judgment," which can be satisfied when a party is "aware that material outside the pleadings is before the court." *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985); *see also Laughlin v. Metro. Washington Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998) (commenting that a court has no obligation "to notify parties of the obvious"). "[T]he second requirement for proper conversion of a Rule 12(b)(6) motion is that the parties first 'be afforded a reasonable opportunity for discovery.'" *Greater Baltimore*, 721 F.3d at 281.

The plaintiffs had adequate notice that the defendants' motions might be treated as ones for summary judgment. The motions' alternative captions are in themselves sufficient indicia. *See Laughlin*, 149 F.3d at 260-61. Moreover, the plaintiffs referred to the motions in their opposition brief as ones for summary judgment, and both parties cited to previously-filed documentary exhibits to support their arguments. Therefore, the court will treat the defendants' res judicata motions as ones for summary judgment.

Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion. "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). Whether a fact is material depends upon the substantive law. *See id.* "A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts

showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court must "view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the [summary judgment] motion,'" *Scott v. Harris*, 550 U.S. 372, 378 (2007) (alteration in original) (quoting *United States v. Diebold*, 369 U.S. 654, 655 (1962)), but the court also must abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993) (internal quotation marks omitted).

II.     Res Judicata

The preclusive effect of a judgment rendered in state court is determined by the law of the state in which the judgment was rendered. *Laurel Sand & Gravel, Inc. v. Wilson*, 519 F.3d 156, 162 (4th Cir. 2008). The parties agree that, in this case, Maryland law applies to determine the preclusive effect of the prior suit. (*See* Smith Res Judicata Mot. Mem. Law 5, ECF No. 164-1; Res Judicata Resp. Opp'n 22 n.81.) Under Maryland law, the elements of res judicata, or claim preclusion, are: (1) the parties in the present litigation are the same or in privity with the parties in the earlier dispute; (2) the claim presented in the current action is identical to the one determined in the prior adjudication; and (3) there has been a final judgment on the merits. *Laurel Sand*, 519 F.3d at 162.

a.  **Parties**[4]

Under Maryland law, for res judicata to apply, the parties in the present litigation must be

---

[4] The plaintiffs, in arguing against the application of res judicata, maintain that Judge Quarles already decided that the issues and parties in this case are not the same as in the state action. (*See, e.g.*, Res Judicata Resp. Opp'n 1.) Judge Quarles's opinion, however, was in response to the defendants' prior argument that the then-ongoing state court litigation justified abstention, which is evaluated under a different standard than is res judicata. (Quarles Mem. Op., ECF No. 21.) Further, Judge Quarles "assum[ed], without deciding, that the state court action is parallel litigation," finding that the factors from *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800 (1967), ultimately did not support abstention. (*Id.* at 12.)

the same or in privity with the parties in the earlier dispute. *Laurel Sand*, 519 F.3d at 162. It is undisputed that Cognate and Smith were parties to the previous case. But several parties in this case—Healthbank, Oncocidex, Theradigm, and Vesta on the plaintiffs' side, and Smith Consulting and MacroCure on the defendants' side—were not and, therefore, the privity analysis is at issue. In Maryland, "where persons, although not formal parties of record, have a direct interest in the suit, and in the advancement of their interest take open and substantial control of its prosecution, or they are so far represented by another that their interests receive actual and efficient protection, any judgment recovered therein is conclusive upon them to the same extent as if they had been formal parties." *Ugast v. La Fontaine*, 55 A.2d 705, 708 (Md. 1947); *see also Cochran v. Griffith Energy Servs., Inc.*, 43 A.3d 999, 1002-03 (Md. 2012). The court finds that, even viewing the facts in the light most favorable to the plaintiffs, there is no genuine dispute that the non-Cognate plaintiffs, Smith Consulting, and MacroCure are in privity with the parties from the state court action.

### i. *Non-Cognate Plaintiffs*

Oncocidex and Theradigm merged with Cognate, effective December 30, 2013. (Merger Certificates 1, ECF Nos. 63-7, 63-8.) Given that the amended complaint in this case was filed in March 2015, when Oncocidex and Theradigm no longer existed as individual entities, the issue of whether these two parties are in privity with Cognate may be moot. (*Id.* at 1, 2 ("The name of the surviving corporation is Cognate," and "[u]pon the effective date of the Merger, . . . Oncocidex, Inc. shall cease to exist.").) Even assuming that is not the case, the mergers are sufficient to establish privity: both occurred before the state court trial, jury verdict, and entry of judgment; and the merger documents state that Cognate shall succeed to all tax attributes, assets, and liabilities of Oncocidex, (*id.* at 2). *See Buckley v. Airshield Corp.*, 977 F. Supp. 375, 379 (D.

Md. 1997) ("Airshield USA is in privity with [the party to the original lawsuit] because the two entities have merged.").[5]

Healthbank and Vesta also are in privity with Cognate given their overlapping ownership and management. Powers, who was a party to the state court lawsuit, is the sole director of Vesta and Healthbank. (Powers Decl. ¶ 1, ECF No. 77-7.) Powers and Hemphill, who also was a party to the prior litigation, owned approximately seventy percent of Toucan Capital Fund II LP, which was a party to the state court lawsuit.[6] (2012 Powers Dep. 28:20-30:1.) Since 2003, Powers and Hemphill have been the only directors of Cognate, which has been owned entirely by Toucan funds. (*Id.* at 51:15-52:15.) The Toucan investment fund is the main shareholder of the non-Cognate plaintiffs. (Powers Decl. ¶ 3.) Toucan Partners LLC, whose only partners are Powers and Hemphill, owns Healthbank. (2012 Powers Dep. 31:8-32:1.) Further, although the amended complaint lists new addresses for Vesta and Oncocidex, when the original complaint was filed in June 2013, all the plaintiffs were listed as sharing an office suite in Maryland. (Original Compl.) Finally, John Harman and Michael Fried were lawyers for all the defendants in the state court action, (*see* Circuit Court Docket Sheet), and are lawyers, along with others, for all the plaintiffs in this case, (*see* Notice of Appearance, ECF No. 14). The Second Circuit, although applying New York law, has said that having the same attorneys in two actions brought at about the same time is of "singular significance" in the privity analysis. *Ruiz v. Comm'r of the Dep't of Transp.*, 858 F.2d 898, 903 (2d Cir. 1988). Even if, as the plaintiffs maintain, the non-

---

[5] The plaintiffs argue that the non-Cognate plaintiffs did not receive "actual and efficient protection," *Ugast*, 55 A.2d at 708, in the state court action because these entities had separate trade secrets claims that Cognate did not present to the jury, (Res Judicata Resp. Opp'n 37-39); the Oncocidex and Theradigm mergers cannot control the privity analysis because they occurred after the close of discovery in the state case, (*id.* at 40); and *Buckley* is inapposite because that case dealt with parties suing over the exact same patent that was at issue in a prior litigation, (*id.* at 41). The court agrees with the defendants that these arguments go more toward whether the claims in both cases are identical, rather than whether the parties are in privity.

[6] Toucan Fund II was liquidated in 2010 and a new fund, Toucan Fund III, was created. (2012 Powers Dep. 46:4-13, ECF No. 63-9.)

Cognate plaintiffs have separate bank accounts, tax filings, and scientific and medical collaborations, the above factors are enough to establish that Vesta and Healthbank are in privity with Cognate.

The court, therefore, concludes that the non-Cognate plaintiffs are in privity with the defendants from the state court litigation.

### ii.  Smith Consulting

In *deLeon v. Slear*, the Maryland Court of Appeals quoted the Restatement (Second) of Judgments § 51 (1982) for the proposition that "[i]f two persons have a relationship such that one of them is vicariously responsible for the conduct of the other, and an action is brought by the injured person against one of them," then "[a] judgment against the injured person that bars him from reasserting his claim against the defendant in the first action extinguishes any claim he has against the other person responsible for the conduct unless: (a) The claim asserted in the second action is based upon grounds that could not have been asserted against the defendant in the first action; or (b) The judgment in the first action was based on the defense that was personal to the defendant in the first action." 616 A.2d 380, 387 (Md. 1992). According to the Restatement, a vicariously liable relationship includes that of a "principal and agent for matters within the scope of the agency relationship."[7] Restatement (Second) of Judgments § 51 cmt. a (1982).

The amended complaint alleges that Smith acted as the agent of Smith Consulting, his wholly-owned company. (Am. Compl. ¶¶ 26, 76, 84, 92, 100, 108.) According to the Restatement and Maryland law, these allegations are sufficient to establish that Smith Consulting

---

[7] In addition, under Maryland law, an employer may be liable for acts "which his [employee] does with the actual or apparent authority of the [employer], or which the [employee] does within the scope of his employment, or which the [employer] ratifies with the knowledge of all the material facts." *See, e.g.*, *Oaks v. Connors*, 660 A.2d 423, 426 (Md. 1995). Therefore, Smith's conduct, which the amended complaint alleges was on behalf of, *inter alia*, his wholly-owned consulting company, would have been with the actual or apparent authority of that company, within the scope of his employment, and ratified by his employer.

is vicariously liable for Smith's conduct. In the state court case, Cognate brought several counterclaims against Smith and lost. Therefore, the judgment against Cognate, the "injured person" in the Restatement definition, "extinguishes" any claim the plaintiffs have against Smith Consulting unless the claim asserted in the second action is based upon grounds that could not have been asserted against the defendant in the first action, or the judgment in the first action was based on a personal defense. The plaintiffs argue that the first caveat applies because Smith Consulting has at least another agent, Cherise Smith, who may have acted unlawfully on behalf of Smith Consulting.[8] (Res Judicata Resp. Opp'n 32-33.) In *deLeon*, the Maryland Court of Appeals favorably cited a case where a federal district judge held that a federal suit against the plaintiff's supervisor and corporate employer was precluded by the plaintiff's suit in state court on the same charges against a different co-worker because the employer's potential liability was exclusively vicarious. 616 A.2d at 386-87 (citing *Michelson v. Exxon Research & Eng'g*, 629 F. Supp. 418 (W.D. Pa. 1986)). This reasoning applies here as well: the plaintiffs are alleging that Cherise Smith may have assisted in the misappropriation of trade secrets, which, the court will explain, is the same claim that Cognate made or could have made in the state court action; and Smith Consulting's potential liability is exclusively vicarious. Therefore, there is no genuine dispute of fact that Smith Consulting is in privity with Smith.

### iii.  MacroCure

The Maryland Court of Appeals has relaxed the strict requirements of privity and mutuality for purposes of res judicata and collateral estoppel "in situations where the plaintiff had a full and fair opportunity to litigate the same claim in the prior proceeding. In these instances, a defendant not in privity with a defendant to the first suit may invoke the defense of

---

[8] The plaintiffs also allege that, in the state court action, Smith asserted personal defenses that would not apply to other agents of Smith Consulting. (Res Judicata Resp. Opp'n 32.) They do not, however, indicate what those defenses were or explain how they were personal to Smith.

res judicata . . . ." *deLeon*, 616 A.2d at 389 n.5. As explained below, the court finds that the plaintiffs had a full and fair opportunity to litigate the claims raised here in the state court action. Therefore, MacroCure meets Maryland's privity requirements for res judicata as well. Further, even if the plaintiffs' claims against MacroCure are not barred by res judicata, they are issue precluded, or barred by collateral estoppel, because whether MacroCure is independently liable for the use of trade secrets or products misappropriated by Smith would require relitigating whether Smith misappropriated trade secrets or products in the first place.[9]

In Maryland, four elements must be satisfied for the doctrine of collateral estoppel to apply: (1) the issue decided in the prior adjudication is identical to the one presented in this action; (2) there was a final judgment on the merits; (3) the party against whom the plea is asserted was a party or is in privity with a party to the prior adjudication; and (4) the party against whom the plea is asserted was given a fair opportunity to be heard on the issue. *See Colandrea v. Wilde Lake Cmty. Ass'n, Inc.*, 761 A.2d 899, 909 (Md. 2000). The court already has concluded that the parties are in privity, and there is no dispute that the state court action was a final judgment on the merits. (*See* Res Judicata Resp. Opp'n 21.) Further, as will be explained in more detail below, the issues decided in the prior adjudication are identical to the ones presented here: because the state court jury found that Smith did not misappropriate trade secrets or products, and because MacroCure only received this allegedly proprietary information through

---

[9] Even if the plaintiffs were not barred from bringing claims against MacroCure by res judicata or collateral estoppel, this court agrees with the defendants that the plaintiffs have failed to state a claim against MacroCure under the CFAA. (*See* CFAA Mot.) Each of the CFAA provisions the plaintiffs cite in their opposition to MacroCure's motion to dismiss would apply only if MacroCure "accesse[d]" information on a protected computer, 18 U.S.C. §§ 1030(a)(2)(C), 1030(a)(4), 1030(a)(5)(B), 1030(a)(5)(C). (*See* CFAA Resp. Opp'n 10.) The plaintiffs, however, have not alleged that MacroCure "accessed" its computers or network except through Smith. (*See, e.g.*, Am. Compl. ¶ 8 ("On information and belief, Smith acted as MacroCure's agent and within the scope of his employment when he accessed Plaintiffs' computer systems without authorization for the purpose of obtaining Plaintiffs' proprietary information.").) The claims against Smith and Smith Consulting are barred by res judicata. Therefore, for the plaintiffs to survive the CFAA motion to dismiss, they would have to allege that MacroCure independently accessed its computers, which they have not.

Smith, deciding whether MacroCure misappropriated the plaintiffs' trade secrets or products would require relitigating the issues already decided by the state court jury. (Circuit Court Verdict Sheet.) Cognate also was given a fair opportunity to be heard on the issue. During the state court action, Cognate alleged that Smith "unlawfully used Cognate's confidential information to obtain employment in May of 2010 with MacroCure as Head of U.S. Operations." (Second Amended Counterclaims ¶ 16, ECF No. 63-3.) Cognate also raised MacroCure's allegedly unlawful actions several times before the Circuit Court judge, and is appealing those motions that the judge denied. (Civil Appeal Information Report 3, ECF No. 189-1 (including as "[i]ssues on appeal," the Circuit Court's rulings on the "admissibility of testimony about [the] MacroCure laptop").) Therefore, even if the plaintiffs are not barred from bringing their claims against MacroCure on grounds of res judicata, they are precluded by collateral estoppel.

### b.  Claims

Maryland uses the transaction test to determine the identity of claims, looking to "whether the same evidentiary facts would sustain both suits." *Kutzik v. Young*, 730 F.2d 149, 152 (4th Cir. 1984) (citing *MPC, Inc. v. Kenny*, 367 A.2d 486, 489 (Md. 1977)); *see also Colandrea*, 761 A.2d at 908. In determining whether the causes of action stem from the same transaction or series of connected transactions, courts consider such pragmatic factors as "whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." *See* Restatement (Second) of Judgments § 24(2) (1982). Two suits that rely upon the same facts will share an identity of claims even if the legal theories on which recovery is based or the remedies sought are different. *Kutzik*, 730 F.2d at 152. And even if additional facts are pleaded in a later suit, that suit will be precluded if those facts and

issues could have been presented in the earlier suit. *White v. Harris*, 23 F. Supp. 2d 611, 616 (D. Md. 1998); *see also Gertz v. Anne Arundel Cty.*, 661 A.2d 1157, 1161 (Md. 1995). Further, "[a]n error in the first court's judgment does not dispel the *res judicata* effect of the judgment." *Weathersby v. Kentucky Fried Chicken Nat'l Mgmt. Co.*, 804 F. Supp. 756, 761 (D. Md. 1992) (emphasis in original). There is no genuine dispute of fact that all the claims raised by the plaintiffs in this litigation were raised or could have been raised in the state action.

The plaintiffs' first argument for why the claims in the two cases are not "identical" is that Smith's fraudulent concealment during discovery in the state court action prevented litigation of the claims that form the basis of the federal suit. (Res Judicata Resp. Opp'n 22.) In particular, the plaintiffs allege that Smith: lied during his deposition about his use of the Cognate and MacroCure laptops, and the falsity of his statements was not discovered until after the close of discovery in the state court trial; returned the Cognate laptop fewer than two weeks before discovery closed in the state court action; and sent the MacroCure laptop to a MacroCure employee in Philadelphia, and then outside the United States, to prevent its discovery in the state court action. (*Id.* at 23-25.) "[I]t has long been black letter law in Maryland that the type of fraud which is required to authorize the reopening of an enrolled judgment is extrinsic fraud and not fraud which is intrinsic to the trial itself." *Hresko v. Hresko*, 574 A.2d 24, 26 (Md. Ct. Spec. App. 1990); *see also Forkwar v. Progressive N. Ins. Co.*, 910 F. Supp. 2d 815, 821-22 (D. Md. 2012). "In determining whether or not extrinsic fraud exists, the question is not whether the fraud operated to cause the trier of fact to reach an unjust conclusion, but whether the fraud prevented the actual dispute from being submitted to the fact finder at all." *Hresko*, 574 A.2d at 26-27. Here, the defendants in state court raised these discovery issues several times before the Circuit Court judge, who denied their various motions to extend discovery, sanction Smith, and find

13

spoliation. (Circuit Court Docket Sheet.) The August 2013 motion for sanctions, for example, which was filed *after* Smith's interrogatory responses alerted the state-court defendants to his "fraud," alleges that Smith lied about accessing the Cognate laptop, copying documents from the laptop to external storage devices, and accessing those documents on the MacroCure laptop. (Cognate Mot. Sanctions ¶¶ 4-9, 12, ECF No. 81-8.) The motion requests that Smith make available to Cognate and the other state-court defendants the MacroCure laptop and external drives. (*Id.* ¶ 33.) Further, Cognate argued spoliation by MacroCure in a pretrial hearing on February 18, 2014, which the Circuit Court judge rejected. (Pretrial Tr. 85-115, 133.) And in closing arguments, Cognate's counsel mentions Smith's changing story. (Smith Res Judicata Mot. Ex. 1-Q, Closing Arg. Tr. 121.) Finally, Cognate is appealing the state court verdict and lists as potential issues on appeal, *inter alia*, the Circuit Court's rulings denying its motions to amend the scheduling order, extend the discovery order, impose discovery sanctions, and admit testimony about the MacroCure laptop.[10] (Civil Appeal Information Report 3.) Although Smith's and MacroCure's conduct during discovery may be far from exemplary, appealing the state court verdict is the proper avenue for addressing these issues, rather than trying to relitigate them in federal court.

The plaintiffs also argue that this court does not have to reach the fraud issue because new facts have arisen that could not have been alleged in the previous lawsuit. (Res Judicata Resp. Opp'n 27-28.) In particular, the plaintiffs in their response mention that Smith has left MacroCure and is now working at LifeNet, where he may be continuing to use their proprietary information. But LifeNet is not mentioned once in the amended complaint and, therefore, this

---

[10] The plaintiffs argue that there is "no support for [Smith's] contention" that he was helping Cognate employees when he accessed Cognate's materials after his resignation, and that "the scope and extent of this access is wholly inconsistent with the materials accessed." (Res Judicata Resp. Opp'n 14.) Smith, however, offered this explanation to the state court jury which, presumably, accepted it, (*see, e.g.*, Res Judicata Mot. Ex. 1-D, State Trial Tr. 60-73; Closing Arg. Tr. 118-121), and it is not the job of this court to revisit or second-guess the jury's decision.

argument is not properly before the court. *See McKenzie v. Comcast Cable Commc'ns, Inc.*, 393 F. Supp. 2d 362, 373 (D. Md. 2005) (refusing to consider a claim raised for the first time in an opposition to a motion for summary judgment). Further, the plaintiffs have not set forth sufficient facts to establish a genuine dispute regarding Smith's conduct at LifeNet, as they are required to do to overcome a motion for summary judgment. *See Bouchat*, 346 F.3d at 522. The plaintiffs next argue that the CFAA claim addresses new facts because, to bring a CFAA counterclaim in the state court action, the jury would have had to focus on Smith's *access* to the Cognate laptop, and Cognate's misappropriation claims in the prior litigation did not require factfinding on Smith's unpermitted access. (Res Judicata Resp. Opp'n 28.) It is true that the jury instructions in the state court case defined misappropriation as the improper "acquisition," "disclosure," or "use" of a trade secret. (Smith Res Judicata Mot. Ex. 1-Q, Jury Instr. Tr. 40-44.) This distinction, however, is largely semantic: Cognate argued "acquisition," "disclosure," and "use" in state court by explaining how Smith *accessed* Cognate's (and its clients') proprietary information through Cognate's laptop, computer servers, and VPN.[11] Further, it appears that Cognate wanted the term "access" to be included in the jury instructions on the trade secrets claim, (*id.* at 56), and has appealed that issue, (Civil Appeal Information Report 3).

The plaintiffs next argue that their claims are not barred by res judicata because counterclaims in Maryland are permissive, and counterclaims available in an earlier action but not actually litigated there are not forfeited and may be brought in a later suit as long as they would not "nullify" the earlier judgment. *See Rowland v. Harrison*, 577 A.2d 51, 55-57 (Md.

---

[11] For example, in the state court action, Cognate filed an affidavit that explained how the forensic analysis conducted on the Cognate laptop showed that the laptop was "extensively . . . accessed without authorization," confidential information "on Cognate's corporate servers was accessed via Cognate's [VPN]," and "Cognate['s] and its Client[s'] Confidential Information was accessed on external storage devices." (Ganjei Aff. ¶ 11, ECF No. 81-7.) Further, Cognate elsewhere explained that it was able to determine "Smith's access of the documents and files stored on the hard drive of the Cognate Laptop." (Cognate's Sixth Suppl. Answers to Smith's First Set of Interrogs. 7, ECF No. 63-4.) And Cognate's counsel, in closing arguments, tried to explain why Smith was "accessing" Cognate's and its clients' information. (Closing Arg. Tr. 122.)

1990). Specifically, the plaintiffs argue that, because this action raises new claims that would not nullify the judgment in the state court action—for violations of the CFAA and the misappropriation of trade secrets and products not litigated in state court—the plaintiffs are not precluded from raising them here. Regarding the CFAA claim, as explained above, Cognate *did* raise the same allegations in its state court counterclaims. There is no indication that the state-court defendants in this case would not have been permitted to bring the CFAA claim in state court,[12] and, moreover, the question is not whether a party could have brought the federal claim in state court, but whether it could have brought the allegations supporting its federal claim as state claims. *Cf. Henry v. Farmer City State Bank*, 808 F.2d 1228, 1236 (7th Cir. 1986) ("Even assuming, however, that the federal courts have exclusive jurisdiction over RICO claims, the Henrys were still required to raise their allegations of fraud and forgery, which form the sole basis for their RICO claims, as a defense to the mortgage foreclosures."). The facts underlying the state court counterclaims are the same as those supporting the allegations in this case. The plaintiffs, therefore, actually litigated these claims in the state court action, and allowing them to raise the same arguments here would "nullify" that court's verdict.

Finally, the plaintiffs argue that they could not and did not litigate in state court the trade secrets belonging to the non-Cognate plaintiffs. (Res Judicata Resp. Opp'n 29-31.) In fact, they both could have raised—and did raise—these issues. The non-Cognate plaintiffs' trade secrets are stored on Cognate's computer network.[13] In the state court case, Cognate covered its bases by

---

[12] This court has found no Fourth Circuit case law on the issue, but courts in other circuits have concluded that the CFAA creates concurrent jurisdiction. *See H & R Block Tax Servs., Inc. v. Rivera-Alicea*, 570 F. Supp. 2d 255, 268 n.5 (D.P.R. 2008) (listing cases to have held that the CFAA does not create exclusive jurisdiction in the federal courts).

[13] According to the amended complaint, Smith accessed the proprietary information belonging to the non-Cognate plaintiffs through *Cognate's* laptop, server computers, and VPN. (*E.g.*, Am. Compl. ¶¶ 69, 128, 129.) And in a declaration in this case, the plaintiffs submitted that, "[a]t all relevant times, Cognate's computer servers have stored an extensive controlled document database containing confidential and proprietary information" belonging to Cognate and its clients, including Vesta, Healthbank, Oncocidex, and Theradigm, "all of which have entrusted their

asserting that *everything* on the Cognate laptop was a trade secret, even if it focused on a limited number of documents for purposes of trial. (*See* Pretrial Tr. 25-26 ("[W]e believe everything on [the Cognate laptop] is a trade secret . . . but we want to focus on these 133 . . . for purposes of trial."); Closing Arg. Tr. 113 ("[T]here were eleven thousand files . . . on that laptop. It essentially had all of Cognate's business processes on there.").) In that case, Cognate also said that the Cognate laptop in Smith's possession contained its *customer's* or *client's* confidential and proprietary information, (Ganjei Aff. ¶ 11 (emphasis added)); listed Theradigm and Oncocidex documents as examples of those that Smith accessed after his resignation from Cognate, (*id.* Ex. A 5-6, 7); and listed an Oncocidex document allegedly worth at least $1.1 million in its supplemental answers to Smith's interrogatories to explain the damages it sought, (Cognate's Sixth Suppl. Answers 8, 10). Further, the plaintiffs have not listed new dates on which Smith unlawfully accessed or attempted to access the Cognate laptop: in both the state and federal cases, only dates in 2010, 2011, and 2012 are listed. (Cognate's Sixth Suppl. Answers 7; Am. Compl. ¶ 37.) Finally, Cognate received a forensic copy of the Cognate laptop in October 2012, which, while only a week before discovery closed in the state court case, presumably was enough time to have included information on additional trade secrets and products in its June 2013 counterclaims. (Ganjei Decl. ¶¶ 5, 6; *see also* Ganjei Aff. ¶¶ 10, 11.)

In conclusion, even viewing the facts in the light most favorable to the plaintiffs, it is clear that, in the state court action, Cognate did raise, or could have raised, claims identical to the ones presented here.[14]

---

confidential materials to Cognate." (Ganjei Decl. ¶ 2, ECF No. 76-7.)

[14] The court will not allow the plaintiffs to conduct further discovery pursuant to Fed. R. Civ. P. 56(d). (*See* Res Judicata Resp. Opp'n 41-45.) For the reasons stated above, additional discovery about whether MacroCure, the American Red Cross, Smith, Smith Consulting, or LifeNet used the plaintiffs' documents that they received from Smith would not change the disposition of this case, given that the state court jury already determined that Smith did not misappropriate trade secrets or products.

### c.  Final Judgment

A final judgment retains its res judicata consequences pending a decision on appeal. *See Warwick Corp. v. Md. Dep't of Transp.*, 573 F. Supp. 1011, 1014 (D. Md. 1983); *Campbell v. Lake Hallowell Homeowners Ass'n*, 852 A.2d 1029, 1041 (Md. Ct. Spec. App. 2004). In the prior case, the jury entered a verdict in favor of Smith and against the defendants on their counterclaims on March 6, 2014, and the court issued an order entering that judgment on March 25, 2014. (Circuit Court Docket Sheet.) Further, the plaintiffs do not appear to contest that the judgment in the prior case constitutes a final judgment for purposes of res judicata. (*See* Res Judicata Resp. Opp'n 21.)

### CONCLUSION

In conclusion, this court finds that the parties in this case are the same or in privity with those in the state court action, the claims presented in this case are identical to those determined by the state court jury, and there has been a final judgment on the merits. Therefore, the plaintiffs are precluded from bringing this suit in federal court. Because its decision to grant the defendants' motions for summary judgment on res judicata grounds will dispose of the case, the court will not address the defendants' other motions to dismiss, or their discovery motions, which will be denied as moot. The parties' motions to seal, which are unopposed, will be granted. A separate order follows.


<u>March 10, 2016</u>                                    _____/S/_____
Date                                                          Catherine C. Blake
                                                               United States District Judge